HALBUT et al. vs. FORREST CITY.

1. MUNICIPAL CORPORATIONS: *Contracts of; how made and proved.*
   Contracts of municipal corporations may be proved by their ordinances and records, or made by authorized agents without seal, and proved by parol; and the authority of agents may, in many cases, be implied from circumstances.

   No officer, or member of a corporation, can, without its authority, make contracts for it, or bind it by his declarations or admissions.

2. LANDLORD AND TENANT: *Contract to return in good order, etc.*
   Whenever there is an agreement of the tenant to re-deliver the premises in any prescribed condition of good order, it is a question of the real intention and meaning of the parties, whether he meant to become bound to rebuild, in case of their casual destruction by fire during the term. In arriving at this meaning, the circumstances and probable intention of the parties will be considered.

3. STATUTE OF FRAUDS: *Contracts to repair or rebuild.*
   Agreements to repair or rebuild are agreements for work, labor and material, and are not required to be in writing.

4. AGENT: *Authority to rent, no authority to repair, etc.*
   Authority to an agent to rent a house does not authorize him to covenant to repair or rebuild.

5. MUNICIPAL CORPORATION: *Contracts not for corporate purposes, void.*
   A contract by a town for rent of a house solely for the use of the county as a court-house, is void; but when a town is authorized to rent a building for its own use, it will not vitiate the contract to allow it to be used for other purposes of a public nature.

Halbut et al. vs. Forrest City.

APPEAL from *St. Francis* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.
*Howes*, for appellant.
*Brown, contra.*

EAKIN, J. Appellants were the owners of a lot and building in Forrest City, which they had rented to the city for the year 1874, at the rate of $50 per month, by verbal contract. On the sixteenth of December of that year the building was destroyed by fire.

In September, 1876, they filed in the circuit court of St. Francis county their complaint against the town, in three' paragraphs.

The first charges that in the contract for 1874 the town agreed, at the expiration of the lease, to surrender the building in the same condition, in all respects, as it was received, and to keep it meanwhile in repair; that on the fourteenth day of December the lease was renewed for the year 1875, with, substantially, the same agreement; which renewal was ratified by the town council. The building is alleged to have been worth $2,000, and damages are sought for failure to rebuild.

The second paragraph charges the town with gross negligence in the use of said building, and want of due care, in this, that it cut a hole through the ceiling, and so negligently and carelessly passed a stove-pipe through the same as to endanger the building; and although warned of the danger, allowed the pipe to be used in that condition, whereby the building was burned. For this they claim damages.

The third paragraph claims rents accrued since the destruction of the building, not only for the remainder of the month of December, 1874, and for the year 1875, but

afterwards until the beginning of the suit, upon the ground that the town has continued to be tenant by sufferance.

The town of Forrest City admits that it rented the lot. and buildings from plaintiffs for the year 1874, but denies that it agreed to keep the building in repair, or to deliver the same in all respects in the same condition as when received, or that the contract of renting was renewed, as alleged, for the year 1875, or that said contract was ratified by the council. It says that plaintiffs themselves determined the lease for 1874, by notice in writing, demanding possession on the first day of January, 1875, which notice is exhibited by copy. It denies that the building was in its possession or under its control when destroyed by fire, on the sixteenth of December.

In response to the second paragraph, defendant denies carelessness and negligence in the matter of the stove-pipe, from which the fire originated. But says that William H. Wills, one of the plaintiffs and part owner of the building, was a member of the town council; and that, upon the dangerous condition of the stove-pipe being suggested to the council, he was appointed a committee of one to examine the place, and have it made safe at the expense of the town ; and that if there was any negligence in the matter, it was his own.

With regard to the third paragraph, defendant denies indebtedness for the rents of 1875, and demurs to the claim for rent for 1876.

The plaintiff had charged that the premises were rented to the corporation "for the purposes of a town hall and council room, and for other purposes." The original answer admitted this; but afterwards defendant filed a supplemental answer, not expressly denying the fact, but alleging that the building was rented for the use of St.

Francis county, for court rooms, jury rooms, clerk's office, etc , and that the council in this had transcended its authority, and could not bind the town.

Upon trial, the jury found for the plaintiff, and rendered a verdict for the balance of the rent for 1874 only, and costs. Plaintiff moved for a new trial. The motion was overruled, judgment rendered in pursuance of the verdict, and an appeal.

The evidence and proceedings upon the trial have been brought up by bill of exceptions.

Such grounds of the motion for a new trial as require notice may be best considered separately.

The court refused to allow plaintiffs, in support of the contract of renting for 1875, to introduce a conversation on the subject between one of the plaintiffs and the mayor. There was no error in this. It is true that the rigor of the old rule, which required the contracts of corporations to be under seal, has relaxed ; and with regard to municipal corporations especially, it is now conceded that their contracts may be proved by their ordinances and records, or made by properly authorized agents without seal and proved by parol ; and that the authority of agents to make them may in many cases be implied from circumstances. For instance, in this case, if the contract to rent for the year 1874, had not been admitted, it would be sufficiently proved by the acceptance and use of the premises for that year. It remains true, however, that a corporation can not bind itself except by seal, or by matter apparent upon the record of its proceedings, or by the act of some agent thereunto authorized. No officer nor member of a corporation, however much he may be interested in its proceedings, can, without such authority, make contracts for it, or bind it by his declarations or admis-

sions. The conversation with the mayor, unaccompanied with proof of his authority to contract, would have been mere hearsay. There does not appear to have been any offer to make such connection.

It appears in evidence that on the second of November, 1874, plaintiffs had given the defendant written notice that the contract of renting would terminate on the first of January, 1875, and demanding possession at that time. Upon the trial, they offered to prove by parol that this notice had been withdrawn before the building was burned. This the court refused, upon what grounds is not shown. It was admissible, in connection with proof of a subsequent contract for the year 1875. It certainly did not estop the parties from making a subsequent parol contract, and the withdrawal of the notice would be implied by such contract, and enter into it. Without proof, however, of such subsequent renting for 1875, the exclusion of the evidence would not injure the plaintiffs, as such withdrawal would not of itself create a tenancy from year to year, under circumstances which would not have created such a tenancy in the absence of any notice whatever.

It is alleged, as error, that the court excluded from the consideration of the jury, the proceedings of the common council of the seventh and fourteenth of December, 1874. They would have shown that on the seventh the council appointed a committee, of which the mayor was a member, " to make arrangements for securing rooms for court-house purposes, and report" at the next meeting. The committee, at the next meeting on the fourteenth, reported that " after examination we have concluded that the Wills & Halbut building be retained by the city for said purpose, and would recommend the council to rent the same at the terms proposed—fifty dollars in currency per

month." This report was *adopted*, and the mayor appointed three aldermen, not including himself, "to contract for said building." This is the last action on the part of the council which the proceedings would have shown. Evidently they contemplate further action on the part of the committee before the contract should be considered as closed. They were admissible in connection with proof of further action on the part of the last committee, to show its authority. Without such supplemental proof, their exclusion did not injure the plaintiffs.

We come next to the exceptions concerning instructions. A portion of these relate to the liability of the corporation for rents after the year 1874. They are based upon the contingency that the jury should find a contract for continuation of the lease. It is useless to discuss these, as we may say, once for all, that there was no proof sufficient to sustain a finding of the jury, for a continuation of the contract of renting, after the year 1874, nor would have been if all the excluded evidence had been admitted. Henry Halbut, one of the plaintiffs, who attempted to introduce the conversation with the mayor, does not swear, directly, that there was a contract for 1875, independently of the excluded evidence. If there had been he would have been best informed on the subject, and could have set it forth in detail, with the parties who entered into it on the part of the council, and their authority.

William H. Wills, the other plaintiff, deposes in a very confused manner, concerning dates, but evidently means to say that in the fall of 1874, the contract of renting was renewed, and that the last contract was a written one. No written instrument was introduced, nor is it shown through what agent the contract was made, nor how the authority of the agent was revived, as there was never any action

on the renting for 1875, by possession or use, to aid in the implication of a contract. A verdict for rents of 1875, would not have been sustained on the evidence—or, at least, if found, should have been set aside, on motion, by the court below, where the doctrine of *scintillas* does not apply to the same extent as on appeal.

With regard to the liability of the city for damages for carelessness, or on its contract to redeliver the premises in the same condition as received, these questions arise under the tenancy for 1874, during which the buildings were burned. This tenancy is admitted, but the terms are denied, and the *onus* of proving the contract is on the plaintiff. It does not arise from the tenancy.

On this point, the proof is about as follows: The plaintiff Wills, says, that in the spring or winter of 1873 (meaning 1874), he rented the premises to the town of Forrest City, through Mr. A. L. Grady, then a member of the town council, for $50 per month. This contract was verbal. He says, " defendants were to make such repair as the building needed to fit it for their purpose," and also " to leave said building, upon the expiration of the said lease, in good condition and repair."

This was all the positive evidence upon this point. Upon the other hand, Mr. Grady testifies that he was one of the committee of the common council to contract for the building for 1874—that there was a verbal agreement for the renting, and that there was nothing said in said agreement as to the returning the building in the same condition as when rented, after the expiration of the lease; or to repair the building at all; but that the changes in the building, necessary to adapt it to the purposes required, were to be made by the city.

The court refused to charge the jury, on motion of the

plaintiff, that if they found, by the terms of the lease, that the corporation was to return the possession of the buildings to plaintiffs, at the expiration of its lease, in the same condition as when received by it, and the buildings were destroyed by fire, they should find for the plaintiffs the value of the buildings as proven.

Instead thereof, the court, of its own motion, instructed that the defendant, as to this point, was not liable, unless it had expressly covenanted to repair or rebuild, and a mere verbal covenant, or agreement, to return the premises in the same condition as taken, is not sufficient.

This is not correct as an abstract proposition of law. The general rule, as laid down in *Parsons on Contracts, vol. 1, p. 504 (5 ed.), in book 3, chapter 3, section 3,* is, that "if there be an express and unconditional agreement to repair, or redeliver in good order, or to keep in good repair, the tenant is bound to do this, even though the premises are destroyed by fire, so that he is, in fact, compelled to rebuild them; but not if destroyed by the act of God, or the public enemies." The rule, however, is not imperative and unbending, whenever, by the terms, there is an agreement to redeliver the premises in any prescribed condition of good order. It is a question of the real intention and meaning of the parties, whether or not the tenant meant to assume the position of an insurer against fire.

In arriving at this meaning, the circumstances and probable intention of the parties will be considered, and the tendency of the more recent decisions is averse to extending the responsibility of the tenant when the covenant is not special and express, and so clear as to leave little doubt that he really meant to take the risk of an insurer. (See the question discussed in *Levy v. Dyers, 51 Miss., 501,* where various cases are commented upon.) In that case

the defendant had rented a saw-mill, and covenanted to return the same in good running order, except the usual wear and tear. The court concluded that a covenant to redeliver or restore to the lessor in the same plight and condition, usual wear and tear excepted (or words of like import), does not bind the covenantor to rebuild, in case of a casual destruction by fire. Nevertheless, it can not be taken as a proposition of law that a mere verbal covenant or agreement to return the premises in the same condition as taken, is not sufficient to fix the liability. This assumes that such a contract must, in all cases, be in writing. A parol contract for a lease for a year may be made, and where the lessee occupies and pays rent under it, it will be governed by the terms of the original letting. *1 Wash. on R. Prop., p. 531.* See, also, the case of *Richardson v. Grifford, 1 Ad. & Ellis, p. 52,* a case very much like this, where a lease was made without proper writings, and was taken as inoperative for more than three years, in accordance with the Statute of Frauds. The lessee was, nevertheless, held liable on his covenants to repair. The rule is, with regard to these leases which are only good for a limited time for want of writing, under the Statute of Frauds, that *during the time* all the terms of the lease prevail, which do not go to extend the time, or which, in themselves, are not such as require to be in writing. *1 Whar. on Ev., sec. 855.* Agreements to repair or rebuild, are agreements for work, labor and materials, and are not required to be in writing.

Whilst not true in the abstract, the instruction was harmless in its application to the case made by the evidence. The mere verbal contract of Grady certainly did not bind the corporation, in the absence of evidence of his authority. There was no other evidence of that than may be implied from the acceptance and use of the premises by the town.

This, of itself, would only be a ratification of the contract to take, and pay rent; but unless special covenants had been authorized by the council, or reported to it and ratified, or acted upon, the town would not, as to them, be bound by occupation. There was no evidence before the jury which would have justified them in holding the mere verbal agreement of Grady binding on the town, even if, in the direct conflict of evidence, they had found that Grady had made such an agreement.

The law, with regard to negligence, seems to have been correctly given. It was a matter properly left to the jury, and, upon this point, they found for defendant. The evidence was sufficient to support this verdict. It was shown, on the one hand, that the stove-pipe was put up and used whilst the tenancy for 1874 existed, and the arrangement and control of the building was in the hands of defendant; that the hole through the ceiling and upper floor was too small, and brought the pipe in too near contact with the wood ; that it was obviously and well known to be dangerous ; that the council had been warned of the fact, but permitted it to be used by an occupant of the building, and that the loss of the building ensued from that cause. On the other hand, it was shown that the hole had been made under the directions of one of the plaintiffs, who objected to its enlargement, on account of its effect upon the building ; that he was himself a member of the town council, and when the dangerous condition of the pipe was reported to the council, was himself appointed to remedy the defect at the expense of the council; that he accepted the appointment, or at least did not decline, and had taken no steps to secure the building, although there had been ample time to do so. It is not shown that he even objected to the use of a fire in it until altered, or that he interfered in any way.

The court, on motion of plaintiffs, instructed the jury, that if they believed that defendant was using and occupying the building, and that through its carelessness and neglect it was destroyed by fire, it would be liable for the value; and, of its own motion, added, that if the plaintiffs, or either of them, contributed to the negligence, the defendant was not bound. This, in general, is the law. The court was not asked to be more definite in explaining the effect and operation of the contributory negligence.

Upon a view of the whole case, we are of the opinion that, under any proper instructions, the jury ought not, upon the evidence, to have rendered a different verdict upon so much of the complaint as rests upon the contracts for rent, and to repair and redeliver in the same condition as when taken. As to so much of it as rest upon injury from negligence, the evidence was properly presented, upon fair instructions, and the verdict will not be disturbed.

No question is made, in this record, of the propriety of joining the two causes of action, and it is too late now to give this question any importance.

It may be proper to add that it appears, from the evidence, that the building was rented for the use of the county as a court-house. This was not a legitimate town purpose, and if it had appeared that this was the *sole* object of the renting, the contract would be invalid. See case of *Jacksonport v. Watson, MS. Op., this term.* This does not appear, however, either from the pleadings or evidence, and the proper presumption is, that it was used for town purposes also. Where the town may be authorized to rent a building for its own use, it will not vitiate the contract to allow it to be used for other purposes of a public nature. The defense, upon this ground, could not be maintained, but, for the reasons above stated, let the judgment be affirmed.