# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

ANDREW J. WAMPLER *vs.* BERNHARD WEINMANN *et al.*

Argued Nov. 16, 1893. Reversed Dec. 21, 1893.

No. 8466.

**Landlord and Tenant Laws 1883, ch. 100, construed.**

Where, in an action by a landlord against a tenant to recover rent, the tenant, under Laws 1883, ch. 100, interposes the defense that the premises were, without his fault or neglect, so injured by fire as to be untenantable or unfit for occupancy, the burden of proof is upon such tenant to show, upon the trial, that the premises were in such condition. Upon the undisputed evidence in this action, it is *held* that the premises were not so injured by fire as to be untenantable and unfit for occupancy.

Appeal by plaintiff, Andrew J. Wampler, from an order of the District Court of Ramsey County, *William Louis Kelly,* J., made March 20, 1893, denying his motion for a new trial.

On November 5, 1885, plaintiff leased to defendant, Bernhard Weinman the store and basement No. 324 on Wabasha Street, St. Paul, for a beer saloon for the term of seven years and two months from and after August 1, 1885. Weinman agreed to pay as rent $125. per month for the first year, and $150 per month thereafter, monthly in advance, and agreed not to assign the lease or sublet without the consent of Wampler. On the back of the lease the defendant, William Banholzer, guaranteed the payment of

the rent. Weinman occupied the premises under this lease to July 1, 1890, when Banholzer took possession thereof under him and paid the rent to January 1, 1892. The landlord, Wampler, brought this action to recover of Weinman and Banholzer rent for the months of January, February and March, 1892, $450 and $4.65 charges for water used on the premises. Banholzer alone answered that on February 3, 1892, the premises, without any fault or neglect on the part of defendants, were so injured by fire as to be untenantable and unfit for occupancy and were abandoned by them. This was the question litigated. Laws 1883, ch. 100. The jury returned a verdict for plaintiff for $180 only, having determined, evidently, that the premises were rendered untenantable by the fire. Plaintiff moved for a new trial. Being denied he appeals. The discussion here was upon the evidence, whether or not it was sufficient to support the claim that the premises were so injured by fire without fault or neglect on the part of defendants, as to be untenantable or unfit for occupancy.

*Marcus D. Munn* and *Henry B. Farwell*, for appellant.

A tenant sued for rent, in order to show a defence under Laws 1883, ch. 100, must aver and prove that the building was destroyed or injured without fault or neglect on his part. *Roach* v. *Peterson*, 47 Minn. 291; *Johnson* v. *Oppenheim*, 55 N. Y. 280; *Suydam* v. *Jackson*, 54 N. Y. 450; *Butler* v. *Kidder*, 87 N. Y. 98.

*A. E. Bowe*, for respondent.

It appears that a fire had extended into the basement of No. 324, and had burned out the water closet, had burned the rafters overhead, had discolored the walls of the part used for a restaurant, creating a nauseous odor, had burned the water pipes off, and the basement was deluged with water used in putting out the fire, which was of great extent. In addition it appeared that two large holes had been broken through the ceiling over the restaurant, breaking the plastering and littering the restaurant tables, the dishes thereon and floor underneath, and these holes were made at or about the time of the fire and presumably were made by the firemen in order to get a hose into the restaurant from above, in case it became necessary. The jury had a right to conclude that the demoralized con-

dition of the ceiling and the plastering were sufficient injuries to render the premises unfit for occupancy.

Buck, J. The order denying the plaintiff's motion for a new trial must be reversed. The action is brought for rent claimed to be due upon a written lease dated November 5, 1885, made by the plaintiff and the defendant Weinmann, and upon which lease the other defendant, Banholzer, was a guarantor for the payment of the rent. The premises are described in the lease as that certain store and basement known as "No. 324 Wabasha Street," in the city of St. Paul, in a three-story brick block. The premises rented were twenty-five feet in width, on Wabasha street, and extended back east 75 or 80 feet. The lease was for a period of seven years and two months from and after the 1st day of August, 1885, until October 1, 1892, at the rate of $125 per month for the first year, and for the remainder of the term at the rate of $150 per month. The defendant Weinmann does not appear to have occupied the premises after July, 1890, but defendant Banholzer, in his answer, admits that about the 1st day of July, 1890, he took the premises described in the complaint, and occupied them, either by himself or an undertenant, until about the 3d day of February, 1892, at which time he alleges that the premises, without any fault or neglect on the part of the defendants, or either of them, became so injured by fire as to become untenantable and unfit for occupancy, and that thereupon he (Banholzer) quit and surrendered up possession of said premises, and that he has never since such surrender occupied the same or any part thereof. These allegations were denied by the reply of the plaintiff. Plaintiff claimed rent due for the months of January, February, and March, 1892, to the amount of $450, and $4.65 for water used on said premises. The jury found a verdict for plaintiff for the sum of $180, and the plaintiff moved for a new trial; because of errors of law occurring at the trial, and because the verdict in said action was not justified by the evidence, and was contrary to law.

The verdict of the jury is not only clearly and manifestly against the great preponderance of evidence, but the undisputed evidence leads directly to the conclusion that the jury was influenced by prejudice, bias, gross mistake of facts, or incorrect appreciation of the law applicable to the case in rendering the verdict. We do not

interfere with the province of the jury in determining as to the weight of evidence or finding upon conflicting evidence, for such a case is not here presented by the record.

The defense is based upon the allegations in the answer that the premises were injured by a certain fire, which it is alleged occurred February 3, 1892, and whereby they were rendered untenantable and unfit for occupancy. At common law, this defense would not be available, for a tenant would not thereby be released from the payment of rent, where there was a covenant in the lease to pay it, and the land and premises were to be used for a term of years, unless the tenant protected himself by some clause in the lease, whereby, in case of destruction of the premises by fire, he should not thereafter be compelled to pay rent. This liability of the tenant to pay rent in such cases frequently operated as a great hardship, and led to the enactment by the legislature of several of the states of laws upon the subject; and, among others, our own state, by Laws 1883, ch. 100, provided that "the lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable or unfit for occupancy, shall not be liable or bound to pay rent to the lessees or owners thereof after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied." This law defendant invokes in his behalf, and insists that in this action he has brought himself within its provisions.

This being an affirmative defense, of course the burden of proof to sustain his allegations rested upon the defendant. The evidence of the origin of the fire, and whether it occurred without any fault or neglect on the part of the defendants, or either of them, was very meager, as stated by the court below. It is not necessary for us to discuss this point, or in any manner determine it, because upon another trial this matter or question may possibly be made more fully to appear by one party or the other, and not be left in the uncertain condition in which it now presents itself to us. While, upon the question of the extent of the damage caused by the fire, there was a slight conflict of evidence, yet, for the purpose of this decision, we shall assume that the facts were as proven by the defendant, or by

the uncontradicted evidence of the plaintiff. The injury consisted of:

(1) Two holes broken through the ceiling in the rear part of the store, between the joists, and somewhere from one to three or four feet long, and from one to two feet wide; some of the defendants' witnesses testifying that the holes were much smaller, and one of them testifying that the holes were only the size of a man's foot, and caused by a man's putting his foot there. It did not appear, however, that they were caused by fire.

(2) In the partition wall in the basement, and built through it, was a water-closet, used in common by the occupants of the building; that is, as we understand it, by the occupants of other portions of the block besides the store. Part of this water-closet consisted of common boards, evidently built around the other portion of the closet as a screen. There was also a water pipe connected with the closet, and this was burned off in one place. The boards were also burned. This water-closet was located several feet in the rear of the store, and the basement under it, and it formed no part of the premises mentioned in the lease, and it is very questionable, if it had been entirely destroyed, whether in such case the defendant could interpose such fact as an element or ingredient of his defense; but upon the trial the parties treated it as one of the questions in the case, and we will so regard it here. It does not appear that the closet was injured or rendered unfit for use in any other manner than here stated.

Sanson, a witness for the defendant, testified that the water on the floor of the basement was several inches deep, but on cross-examination he said that he did not see any water, and did not measure it. He also testified that there was some plastering scattered over some restaurant dishes, tables, and "everything," as he termed it, referring, as we understand it, to his restaurant property stored there; but as the only plastering which fell into the room, so far as it appears, came from the space where the holes in the ceiling were found, the amount must necessarily have been very small. The joists were charred or burned, but to what extent no one testified. It does not appear that they were burned off, weakened, or rendered dangerous or unfit for use; and all, or nearly all, of the joists so charred were not under the rented store, but under the rear thereof, and under a room back of the store. The

uncontradicted evidence shows that the new joists placed in the basement after the fire were put there by the plaintiff, because previously a trap door had been cut through the floor, and the ends of the joists had been cut off, and never strengthened, which fact plaintiff did not discover until after the fire, and upon the recommendation of the carpenter the new joists were put in. It does not appear that the fire burned any hole through the floor into the store.

(3) The claim that the walls of the storeroom were badly smoked and discolored needs no discussion, except to say that the undisputed and conclusive evidence showed that this condition of the walls arose from the use of the storeroom for restaurant purposes, and came from a large stove or range so used therein by a tenant of the defendant, to whom he had sublet the store, in direct violation of the terms of the lease, which prohibited any subletting, and which subletting defendant expressly avers in his answer.

We think that we have thus fully and fairly stated the extent of the injury upon which the defendant bases his defense. It may be well to state here, as a notable fact in the case, that the defendant Banholzer went into this store the next day after the fire; yet he never went into the basement to examine the extent of the injury, or to see whether the premises were untenantable or unfit for occupancy, nor does it appear from the evidence that he ever made any examination for such purpose, not even testifying to the size of the holes in the ceiling, nor did he give any testimony relative to the smoky and discolored appearance of the walls of the store; neither did he ever notify the plaintiff that the premises were untenantable or unfit to occupy, by reason of the fire, until the answer was served in the case. His attorney, who, at his request, tendered the keys to the store to the plaintiff, and who offered to surrender the premises to him, did not state that he did so because of the condition of the premises, or that they had become untenantable or unfit to occupy for any cause. The restaurant goods or property of Sanson stored on the premises do not appear to have been removed prior to the commencement of the action. We think that, upon such a defense as here interposed, it is proper and just to all parties for us to consider the condition of the premises, their situation, the business for which they were used, or intended to be used, and whether they were occupied at the time of the fire, or whether any business was

then being carried on there or interrupted, and all the surrounding existing circumstances in regard to the premises at the time of the fire. At this time there were no persons in the store or on the premises, and no business of any kind was carried on there, except for storage of Sanson's restaurant property.

For what business, then, was the store rendered untenantable and unfit for occupancy? Banholzer himself was not using the building for any purpose. It certainly was not rendered untenantable and unfit for occupancy for the purpose of storing Sanson's restaurant property in the store at the time of the fire. Banholzer did not attempt to use the premises, or make any effort in that direction; and had he been an actual occupant, carrying on business there, we hardly think that he would have deemed the premises untenantable or unfit for occupancy by reason of the injury to the premises, as shown by the evidence in this case. It does not appear that he wished to carry on any business there himself, and he had no right, under the terms of the lease, to sublet it. The question, therefore, of whether it was tenantable or unfit for occupancy by a sublessee, cannot be available to defendant as a defense in this action. It does not appear that the premises were ever intended to be used as a family residence or for dwelling purposes.

A large portion of the business of this country is carried on through rented premises, and it would be a dangerous precedent to hold that valuable leases like this, bringing $1,800 per year, could be thus nullified for such a trifling injury. It is common sense and common knowledge that the injuries to these premises could have been repaired for a few dollars, and we think that the undisputed evidence does not disclose facts sufficient to justify the jury in finding that there was such substantial and material damage as to render the premises untenantable and unfit to occupy. Suppose a gust of wind had blown the store door open or off from its hinges, or blown out a window, and thereby dust was carried into the store, and upon tables, dishes, or goods, to the extent or amount that plaster fell upon them in this case; would it justify the tenant in avoiding a valuable lease like this, executed for a term of years, and could it be reasonably said that the landlord's right to collect his rent would thereby be barred or destroyed? The bursting of a water pipe, by reason of the freezing of the water therein, is of frequent occurrence in this cli-

mate, and will it be serious contended that one such instance would terminate the legal relation of landlord and tenant? Does the burning of a few common boards, used as a screen around a water-closet, under the conditions appearing here, authorize a tenant to surrender up the premises, and cease paying rent? And, if all of these supposed or actual injuries combine and exist at one time, we do not think that they would constitute a valid defense, within the meaning of Laws 1883, ch. 100.

Whose duty it would be to repair in such a case as this we do not determine, for no demand was made upon the landlord to repair, and the tenant made no effort to do so, and that question is not properly before us. But the vital and important interests of the country in the renting of large and expensive buildings for heavy rent, and for a long term of years, ought not to be jeopardized or entirely destroyed by the narrow and strict construction placed upon our statute referred to by the defendant; and, as neither the facts nor the law justify the order denying a new trial, the same is reversed.

(Opinion published 57 N. W. Rep. 157.)