TEDSTROM v. PUDDEPHATT.

Opinion delivered May 8, 1911.

1. LANDLORD AND TENANT—COVENANT FOR REPAIRS.—A covenant in a lease that the landlord will keep the premises in good habitable condition is in effect a covenant on the landlord's part to make repairs so as to keep the premises in habitable condition. (Page 196.)

2. SAME—EFFECT OF MUTUAL COVENANTS.—Covenants in a lease on the part of lessor, such as to keep the premises in habitable condition, and, on the part of the lessee, such as to pay the rent, are mutual undertakings, and the refusal by the one party to perform his part of the contract may justify the other party in treating the contract as rescinded. (Page 197.)

3. SAME—COVENANT FOR REPAIRS—NOTICE AND OPPORTUNITY.—Where the duty is imposed upon a landlord to make repairs, before the tenant will be entitled to abandon the premises and relieve himself from his obligation to pay rent because such repairs have not been made, he must first give notice to the landlord to make the repairs and allow him reasonable time in which to make them. (Page 197.)

4. SAME—FORFEITURE FOR INJURY TO BUILDING.—Under a lease which provided that the landlord should keep the premises in good habitable condition, and that in the event that the "building should be destroyed by fire or other casualty, so that the same cannot be occupied without rebuilding, then either party hereto may have the right to forfeit this lease," the right to terminate the lease, in case of injury to the building by fire, depended upon whether the injury to the building by fire or other casualty was a total destruction requiring a rebuilding, and not simply a repairing, to fit it for occupancy. (Page 197.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*T. F. Sorrells* and *Taylor & Jones,* for appellants.

Under the facts shown appellants had the right to forfeit the lease. Appellees covenanted in the contract to keep the house at all times "in a good habitable condition," and further it was agreed that if it should be destroyed by fire, so that the same cannot be occupied without rebuilding, "either party should have the right to forfeit the lease." The destruction need not be complete. 11 Pa. Super. Ct. 564; 3 Words & Phrases 2031, 2032; 6 Pa. 379; 47 Am. Dec. 474; 70 Mass. (4 Gray) 256, 268; 64 Am. Dec. 64. The conditions in the lease will be construed liberally in favor of the tenant and strictly against the grantor. 18 Am. & Eng. Enc. of L. 617; 8 N. H. 174; 30 Barb. 38; 52 Pa. St. 149; 11 Cal. 298; 53 Ark. 107; 78 Ark. 230; 92 Ark. 324.

*Bridges & Wooldridge,* and *Coleman & Gantt* for appellees.

Under the covenant to keep the house in a good habitable condition, the appellees were entitled to a reasonable time in which to repair the building and make it habitable. 24 Cyc. 1094; 18 Am. & Eng. Enc. of L. (2 ed.) 230.

Appellants were not authorized to claim a forfeiture of the lease, because the building was only partially destroyed, and rebuilding was not necessary. 70 Mass. 256; 11 Pa. Super. Ct. 560; Tiffany on Landlord & Tenant, 1203; *Id,* 1197; Jones on Landlord & Tenant 679; Underhill on Landlord & Tenant 1349; 20 Pac. 621; 37 Mo. App. 281.; 2 Barn. & Adol. 896; 64 Atl. 953; 51 N. E. 893; 14 N. E. 50; 41 O. St. 662; 52 Am. Rep. 99; 54 N. Y. 450; 65 S. E. 41; 50 La. Ann. 378; 57 N. W. 157; 22 Conn. 425.

FRAUENTHAL, J. This was an action instituted by the plaintiffs below, C. H. and William Puddephat, to recover the rent of a three-story brick store building, situated in the city of Pine Bluff, for the months from April to December, 1910. The action was founded upon a written lease, executed on October 23, 1908. By the terms of this lease the plaintiffs rented to the defendants said building for a term of three years ending on September 30, 1911, at a rental of $250 per month, payable at the end of each month. Said lease provided that the plaintiffs "agree to keep

said premises in a good habitable condition," and also contained the following provision: "It is further agreed that, in the event that the building upon said premises should be destroyed by fire or other casualty, so that the same cannot be occupied without rebuilding, then either party hereto may have the right to forfeit this lease, and the unearned rent shall cease." The defendants went into possession of the leased property under said contract and occupied the entire building for the purpose of conducting therein a wholesale and retail furniture business. They occupied it from the date of the lease until January 28, 1910, when the building accidentally caught on fire. The fire originated in the roof or ceiling of the third story, and the roof of the building, except at one corner, was entirely burned off. The rear wall of the building was slightly damaged, but a great quantity of water was thrown on and in the building, damaging the defendant's stock of goods, so that they were removed from the building.

The plaintiffs at once began the work of restoring the building to its former state. This consisted of certain masonry work in building, two brick piers in the first story at the rear of the building, and of putting plaster on the north, south and west sides thereof, and of carpentry work in putting a new roof on the building; and the entire work was completed by April 1, 1910. The masonry work cost $30, but the evidence does not show what the carpentry work cost.

On February 16, 1910, the defendants gave written notice to the plaintiff that they had decided to cancel the lease on account of said fire, and on February 19 again gave written notice that they exercised their option under the contract to cancel the lease, and returned the keys of the building. On February 18, 1910, plaintiffs wrote the defendants that they were preparing the restoration of the building, which would be completed in a short time, and that they would expect the defendants to continue the occupancy of the building under the lease contract; and on February 21, 1910, returned to defendant the keys sent them, and again wrote them that they expected the defendants to continue the rental of the building.

On March 28, 1910, the plaintiffs wrote to the defendants that the work of repairing the building had been completed, and

that they expected the defendants to continue possession thereof under the terms of the lease. Defendants, however, refused to take possession of the building, and insisted that they had the right to and did declare a forfeiture of the contract of lease.

The above is substantially the undisputed evidence introduced upon the trial of the case. The court, amongst other things, instructed the jury as follows:

"In this case the court holds that the words in the lease 'destroyed by fire' mean the complete destruction of the premises, or at least a destruction to such an extent as to permanently render the premises unfit for the purposes for which they were leased. An injury which merely deprives the lessee of the use of the property for a short time in comparison to the whole term—in this case, 63 days out of three years—and which involves but a small part of the building, easily and quickly repaired and restored to its former condition, is not a destruction within the meaning of the law, and did not authorize the defendants to surrender the premises and rescind the lease contract." Thereupon the court instructed the jury to return a verdict in favor of the plaintiffs for the amount of the rent sued for, which was done.

The sole question involved in this case is whether or not, under the above provisions of said written lease, the defendants had the right, on account of the extent and character of the injury to or destruction of the building by reason of said fire, to cancel said lease and declare a cessation of the rent.

It is urged by counsel for defendants that by one of the provisions of the lease the plaintiffs covenanted to keep said premises in a good habitable condition, and that this covenant was broken by reason of the inability of defendants to occupy the building during the period of two months on account of said fire. It is claimed that the breach of this covenant relieved the defendants from the covenant upon their part to continue the lease and to pay rent. But we think that this provision of the lease was in effect only a covenant on the part of the lessor to make repairs so as to keep the premises in a habitable condition. The defendants went into possession of the premises at the execution of the lease, and accepted same in its then condition, and it is to be presumed that it was then in an habitable condition within the

meaning of this provision of the lease. If, during the term of the tenancy, the premises became injured through wear and tear, or otherwise, so as to make them not habitable, then by this provision it was in effect stipulated that the plaintiff should make same habitable; and this, we think, only meant that they agreed to make such repairs as were necessary to make same habitable. This provision imposed upon the plaintiffs the expense of making such repairs, and we think that it was inserted in the lease for the purpose of stipulating which one of the parties should pay for the cost of making such repairs.

Ordinarily, where there has been a breach of an agreement on the part of the landlord to repair, the tenant is remunerated by a recovery of damages suffered by him by reason of such breach. *Young* v. *Berman,* 96 Ark. 78. But it is also true that the covenants in a lease on the part of a lessor, and the agreement on the part of a lessee to pay the rent, are mutual undertakings, and the refusal by the one party to perform his part of the contract may justify the other party in treating the contract as rescinded. *John A. Gauger & Co.* v. *Sawyer & Austin Co.,* 88 Ark. 422; *Harris Lumber Co.* v. *Wheeler Lumber Co.,* 88 Ark. 491.

So that the failure on the part of the lessor to perform his covenants in the lease may justify the abandonment of the premises by the lessee, and may work a cessation of the rent. *Berman* v. *Shelby,* 93 Ark. 472. However, there can be no default made in the performance of a covenant until the party upon whom the duty is imposed has an opportunity to comply with the terms thereof. Where it is the duty of the lessor to make repairs, he cannot be said to be in default until he has had an opportunity to remedy any defects in the premises, and has failed or refused to do so. It has therefore been held that where the duty is imposed upon the landlord to make repairs, before the tenant will be entitled to abandon the premises and relieve himself from his obligation to pay rent because such repairs have not been made, he must first give notice to the landlord to make the repairs and afford him an opportunity and a reasonable time in which to make them. 24 Cyc. 1093.

In the case at bar, if the injury to the building by reason of the fire was only of such an extent and nature as to require re-

pairs to be made in order to place the premises in a habitable condition, then the plaintiffs had a reasonable time in which to make such repairs so as to comply with the terms of this provision of the lease; and we think that sixty days was not an unreasonable time under the conditions and circumstances of this case in which to make such repairs. If, however, the injury to the building by reason of the fire was of such a character and to such an extent that mere repairs would not restore it to a habitable condition, then the rights of the parties would be governed solely by the effect to be given to the further stipulation of the contract of lease which provided for a forfeiture thereof in case of destruction of the premises by fire so that same could not be occupied without rebuilding. We think, therefore, that the right of the defendants to have declared a forfeiture of the lease and cessation of the rent on account of the injury to the premises by reason of said fire must be determined solely by the terms of this latter provision of the lease. It clearly appears from this contract of lease that the parties intended to stipulate what their rights and obligations would be in case the building should be injured or destroyed by fire, by the terms of this latter provision referring to the destruction of the premises by fire, and not by the terms of the provision requiring the plaintiffs to keep the premises in good habitable condition.

The controlling question, then, in this case is whether or not the building upon the premises was destroyed by fire to such an extent that the same could not be occupied without rebuilding. In that event, and in that event alone, did the defendants have a right to declare a forfeiture of the lease and a cessation of the rent.

At common law, the liability of the lessee upon his covenant to pay rent was not affected by the fact that the premises were accidentally destroyed by fire or other casualty, whether such destruction was total or partial. 3 Kent's Com. 584; *Buerger* v. *Boyd,* 25 Ark. 411; *Halbut* v. *Forrest City,* 34 Ark. 246; 1 Tiffany on Landlord & Tenant, p. 1191.

It is usual in a contract of lease to insert a provision relieving the tenant from any continuing liability to pay rent in event of a subsequent injury to or destruction of the premises by an unforeseen casualty. But the liability of the lessee to pay rent, in

event of the injury or destruction of the premises by such casualty, must be determined by the terms of the provision itself. Ordinarily, a provision for a cessation or suspension of the rent refers to an injury to the premises which cannot be repaired, but which requires a rebuilding of the premises. A stipulation in a lease providing for a cessation of rent and a rescission of the contract of lease in event the premises are destroyed or become untenantable by reason of fire means a "substantial destruction and a permanently untenantable condition, rendering further occupancy impossible and necessitating not merely repairs but rebuilding." 2 Underwood, Landlord & Tenant, § 792.

In 1 Tiffany on Landlord & Tenant, p. 1203, the following rule has been formulated from authorities relative to the effect of stipulations in leases provided for a rescission of the lease and a termination of the covenant to pay rent: "A provision of the lease for a termination of the tenancy or of liability for rent upon the destruction of the building, or in case it be destroyed, without any reference to injury, has been decided not to apply when there is no actual destruction, but merely injuries to parts of the building by fire or other casualty, temporarily unfitting such parts for occupancy."

In the case of *Wall* v. *Hinds*, 70 Mass. 256, the lease provided that "if the premises shall be destroyed by fire or other casualty, then the payment of rent and the relation of landlord and tenant shall wholly cease, at the election of either party." In speaking of the extent of an injury to the building by fire which would warrant the termination of the lease by virtue of this stipulation, the court said:

"The evidence fails to show such a destruction of the premises as to absolve the defendant from the payment of rent under the covenants in the lease. The building was, at most, only partially injured, and could have been repaired for a sum less than a single year's rent. The usual stipulation in leases of buildings is that if the premises are injured or destroyed by fire, the rent, or a proportional part thereof, shall be abated. But in the present case it is to be observed that the parties studiously omitted to provide for the contingency of an injury by fire, and confined their agreement to the destruction of the premises. It would require too great a latitude of construction to hold that the par-

tial injury to the premises caused by the fire, as disclosed by the evidence, amounted to such a destruction of them as to terminate the lease by virtue of the stipulation contained in it."

We think that it is well settled by the authorities that, under leases containing provision for a forfeiture thereof and a cessation of the rent, in event of destruction of the premises by fire or other casualty, or inability to occupy the same on that account, a partial destruction of the premises will not terminate the lease, though it renders the premises, or a part thereof, temporarily untenantable for the purpose of the lease, and will not relieve the tenant from future liability for rent. *Peck* v. *Ledwidge,* 25 Ill. 109; *Spalding* v. *Munford,* 37 Mo. App. 281; *Smith* v. *McLean,* 123 Ill. 210; *Lewis* v. *Hughes,* 20 Pac. (Col.) 621; *Humiston* v. *Wheeler,* 51 N. E. (Ill.) 893; *Wampler* v. *Weinmann,* 57 N. W. (Minn.) 157; *Booraem* v. *Morris,* 64 Atl. (N. J.) 953.

In the case at bar it was provided that either party should have the right to cancel the lease in event the building upon the premises should be destroyed by fire or other casualty so that the same could not be occupied without rebuilding. There is a clear distinction between rebuilding and repairing; and, by the terms of this provision, before a forfeiture of the lease could be declared, it was necessary that the building should be destroyed to such an extent that it would require a rebuilding and not simply a repairing to fit it for occupancy. If, therefore, the injury to the building by reason of the fire could be remedied by making repairs, then it was not destroyed to such an extent as to warrant a forfeiture of the lease. This provision of the lease means substantially that there would have to be such a destruction of the building by fire or other casualty as would permanently unfit the premises for occupancy. If the inability to occupy the premises was only partial or temporary by reason of the fire, then there was not such a destruction of the building under the terms of this provision as would cause a forfeiture of the lease or a cessation of the rent.

Under the undisputed evidence in this case, the building was not destroyed but was only partially injured by the fire. It was injured to such an extent that it was rendered not in good habitable condition only temporarily, and could be put in a good habitable condition by making repairs only. Under the terms of this

contract the plaintiff had a reasonable time after the defect in the building occurred in which to make the repairs, and put the premises back in an habitable condition; and this, under the testimony, we think they did.

It follows, therefore, that the court did not err in giving said instruction to the jury, and under the undisputed evidence it was warranted in directing a verdict for the plaintiff. The judgment is accordingly affirmed.