80 P.2d 785

**SCHARBAUER v. COBEAN et al.**

No. 4372.

Supreme Court of New Mexico.

June 13, 1938.

John R. Brand, of Hobbs, for appellant.

Don G. McCormick, of Hobbs, for appellees.

SADLER, Justice.

On June 18, 1936, plaintiff leased to defendants for a term of one year a store in the Town of Hobbs. The lease provided for rent at the rate of $150.00 per month. On February 9, 1937, defendants vacated

the premises, a fire having occurred on February 5th which did some damage to the premises and fixtures, and to·defendants' stock of stationery and office supplies. Plaintiff brought this suit to collect $562.00 rent accrued under the terms of the lease for the remainder of the term, less $188.00 ·rental received from other tenants in mitigation of damages.

The plaintiff's requested findings were accepted by defendants as unobjectionable and became the agreed facts upon which the case was tried. They were formally adopted by the trial court as its findings.· The plaintiff's complaint is that the court drew the wrong conclusion from admitted facts. The· agreed facts so adopted by the trial court are as follows:

"1. That on June 18, 1936, the parties entered into the written lease pleaded at a monthly rental of $150.00.

"2. That on the date stated in the Answer, a fire occurred starting in another room of the same building.

"3. That as a result of the fire, the walls and ceiling of defendants' premises were damaged by smoke and water and a portion of the ceiling was blistered so that it was necessary to remove one strip of the same approximately ten feet in length.

"4. That with the amount of stock and fixtures which defendants had on said premises, it would not have been practical to ·have continued the business while ·the ·work of repairing the building was being : done, such· work· consisting of. re-painting the walls and ceiling, replacing the strip of ceiling and putting material in the hole next to the skylight and replacing the skylight, but such repairs could have been made without removing the stock of goods and fixtures from the store.

"5. That the total cost of the repairs including labor and material was $138.00.

"6. That all of such repairs could have been made within four days time with the building empty and within five days time without removing defendants' goods.

"7. That the amount of the unpaid rent under the terms of the lease in question was $562.00 after defendant had been given credit for all rent collected during the term from subsequent tenants.

"8. That the lease in. question contains the following clause:

" 'It is understood that in the event of the destruction of the premises by fire or other casualty to such an extent as to render· the same untenantable, this lease shall become void and of no effect.'

"9. That ten days time was actually consumed in correcting the damage done by the fire and that the expense thereof was chargeable approximately one-half to labor and one-half to materials used."

The sole question in the case is whether the fire so destroyed the premises as to render the same untenantable within the meaning of the saving clause against casualties by fire appearing in. finding No. 8, supra, and thus ·void. the lease. · The trial court

held that it did and dismissed the complaint. We think the trial court erred.

■ At common law the accidental destruction by fire or act of God of improvements upon the leased premises does not terminate the lease.

"It is a well settled rule of the common law that where lands are the subject of a demise and the buildings or improvements thereon are accidentally destroyed before the end of the term, this destruction of the buildings by fire, tempest or flood does not discharge the covenant to pay rent in the absence of an express stipulation to that effect." 2 Underhill on Landlord and Tenant 1339, § 788.

■ Unquestionably the saving clause here involved is employed to abate the rigor of the common law doctrine where not eliminated by statute. Similar provisions have been construed by the courts of other states and discussed by text writers. The effect of these decisions and the opinion of recognized legal writers upon the subject satisfy us that there was here no such destruction of the premises as to render the same "untenantable" as intended by the use of that term in the lease. Tedstrom v. Puddephat, 99 Ark. 193, 137 S.W. 816, Ann. Cas.1913A, 1092; Tallman v. Murphy, 120 N.Y. 345, 24 N.E. 716; Lewis v. Hughes, 12 Colo. 208, 20 P. 621; Wampler v. Weinmann, 56 Minn. 1, 57 N.W. 157; Vincent v. Frelich, 50 La.Ann. 378, 23 So. 373, 69 Am.St.Rep. 436; Barry v. Herring, 153 Md. 457, 138 A. 266; Basketeria Stores v. Shelton, 199 N.C. 746, 155 S.E. 863; Post v. Brown, 142 Tenn. 304, 218 S.W. 823; Imperial Oil Marketing Co. v. Rogers, 181 Ark. 24, 24 S.W.2d 951.

■ In volume 2 of Underhill on Landlord and Tenant, § 792, page 1349, the author states:

"A provision in a lease that rent shall cease if the premises are destroyed, or that rent shall cease if they shall become untenantable by fire, means a substantial destruction and a permanently untenantable condition rendering further occupancy impossible and necessitating not merely repairs but rebuilding. Mere damage by smoke or water, rendering the occupation of the tenant unpleasant and inconvenient, is not sufficient to bring the case under the stipulation."

■ In Tedstrom v. Puddephat, 99 Ark. 193, 137 S.W. 816, Ann.Cas.1913A, 1092, a leading case, the following is quoted from 1 Tiffany on Landlord & Tenant, page 1203, with the comment that this rule has been formulated from authorities (page 819):

"A provision of the lease for a termination of the tenancy or of liability for rent upon the destruction of the building, or in case it be destroyed without any reference to injury, has been decided not to apply when there is no actual destruction, but merely injuries to parts of the building by fire or other casualty, temporarily unfitting such parts for occupancy."

The court, in Tedstrom v. Puddephat, continues as follows:

"We think that it is well settled by the authorities that, under leases containing provision for a forfeiture thereof and a cessation of the rent, in event of destruction of the premises by fire or other casualty, *or inability to occupy the same on that account,* a partial destruction of the premises will not terminate the lease, though it renders the premises, or a part thereof, temporarily untenantable for the purposes of the lease, and will not relieve the tenant from future liability for rent." (Italics supplied.)

In Tallman v. Murphy, 120 N.Y. 345, 24 N.E. 716, there was a statute, Laws N.Y. 1860, c. 345, which provided that a lessee of a building which shall, without fault or neglect on his part, "be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors, * * * and * * * and may thereupon quit and surrender possession of the leasehold premises." This provision in the statute is practically the equivalent of the lease provision here involved. The court said (page 717): "The statute contemplates an injury to the building which substantially affects the enjoyment of it by the tenant."

Lewis v. Hughes, 12 Colo. 208, 20 P. 621, is a case frequently cited and involves a lease with a provision similar to the one in the case at bar. The provision reads (page 624), "in case the premises shall become untenantable, by reason of fire or otherwise, the rent shall cease until the same are rebuilt." The appellants claimed the premises had become untenantable because of fire. The court said:

"We think the clause relating to the suspension of rent refers to such injury to the premises as cannot be repaired, but necessitates a rebuilding of the premises; and when we consider the covenants on the part of the lessees to repair, with the provision relating to the suspension of rent, it seems evident that such provision was intended solely to relieve the lessees from their common-law liability to pay rent in case of the destruction of the leased premises by fire. There is no evidence tending to show a loss or destruction of the premises, or such an injury thereto as would warrant the jury in finding as a fact that the same could not be repaired, but, to be made tenantable, must be rebuilt. The evidence shows conclusively that, if the premises were rendered untenantable by the fire, it was on account of the injury to the scenery and the furnishings, and from the effect of the smoke and water in rendering the occupancy of the premises unpleasant, and we do not think such evidence brings the case within the terms of the lease relating to the suspension of the rent."

The case of Wampler v. Weinmann, 56 Minn. 1, 57 N.W. 157, is similar to this case, except the provision was in a statute instead of being in the lease itself. It provided for the cessation of rent when a building shall "be so injured * * * as to be untenantable or unfit for occupancy * * *". Laws Minn. 1883, c. 100. The

injury consisted of two holes broken through the ceiling, some burned boards built as a screen, water on the floor of the basement, some fallen plaster which evidently had made the holes in the ceiling. The court held the verdict of the jury for defendant was against the preponderance of evidence and that there was no such injury shown as relieved the tenant from payment of rent. The court said (page 159):

"It is common sense and common knowledge that the injuries to these premises could have been repaired for a few dollars, and we think that the undisputed evidence does not disclose facts sufficient to justify the jury in finding that there was such *substantial and material damage* as to render the premises untenantable and unfit to occupy." (Italics supplied.)

See, also, Vincent v. Frelich, 50 La.Ann. 378, 23 So. 373, 69 Am.St.Rep. 436, the syllabus of which states, "Partial destruction, remediable by repairs, and which do not require reconstruction, will not give good grounds to dissolve the lease."

Barry v. Herring, 153 Md. 457, 138 A. 266, is unusual in that the tenant sought to enforce the lease after a fire which damaged the premises while the landlord tried to terminate it. The lease provided (page 267), "If the property shall be destroyed or rendered untenantable by fire, the tenancy hereby created shall be thereby terminated * * *." The court said:

"It is fairly well settled by the authorities that where a lease contains a provision like the one before us in this case, made primarily for the benefit of the lessee, and the leased building is destroyed or rendered untenantable, the tenancy is thereby terminated if to restore such building it becomes necessary to rebuild it, thereby depriving the tenant of its use. But where the building may be restored by ordinary repairs made thereon with no considerable interruption to the tenant's business while the same are being made, the tenancy is not terminated or the lease forfeited.

"In determining whether the repairs are ordinary repairs, and the interruption temporary only, the value of the property, as well as the duration of the lease, may be taken into consideration."

In Basketeria Stores v. Shelton, 199 N. C. 746, 155 S.E. 863, the following instruction to the jury was held proper (page 864):

"The Court instructs you, gentlemen of the jury, that under a lease of property for the purpose of carrying on therein a store of a certain kind, providing that if the building should be destroyed or rendered unfit for use and occupancy by fire or other casualty, it shall thereupon terminate, such a building is destroyed or rendered unfit for use and occupancy by fire or other casualty, when as a result of a fire or other casualty the building is destroyed or damaged to such an extent that it is unfit for carrying on the business mentioned, and can not be restored to a fit condition by ordinary repairs such as can be made without unreasonable interruption of the business;

that is, such interruption as would cause substantial loss or damage to the business from loss of trade or patronage due to such interruption."

Post v. Brown, 142 Tenn. 304, 218 S.W. 823, states the rule as follows (page 824):

"We think the proper rule to be applied under such circumstances is that where the damage is such as to cause a temporary interruption of the use of the property, which may be remedied with reasonable dispatch, the lease is not terminated, and, upon repair being made by the lessor, the lessee is obligated to the payment of the stipulated rent. The mere impairment of a use as distinguished from its destruction does not deprive the lessee of all interest, and correspondingly does not relieve him from all liability."

The syllabus in Imperial Oil Marketing Co. v. Rogers, 181 Ark. 24, 24 S.W.2d 951, indicates the extent of damage done which the court in that case called "slightly damaged". It reads:

"Fire in filling station quickly extinguished, resulting only in damage to walls and ceiling in one of three rooms, and broken door and window, two holes in roof, and water damage to part of office furniture and equipment caused by fire department, held not to render premises unfit for use as filling station within lease, thereby precluding tenant from terminating lease, especially where necessary repairs could have been made in few hours without interruption of business."

Viewed in the light of these authorities, which we consider sound, the findings do not disclose destruction of the demised premises by fire "to such an extent as to render the same untenantable." There would, of course, be inconvenience to defendants while repairs were under way, rendering it impractical for them to continue the business for such period. But the repairs could have been completed within four to five days. They were completed within ten days, the longer time resulting, no doubt, from the fact that defendants vacated the premises four days following the fire, claiming a termination of the lease. The details of the repairs as outlined in the findings, the small cost thereof, and the limited time required to restore the building, all afford convincing proof that the damage was neither substantial nor material. The trial court should so have held. Its judgment based upon a contrary conclusion must be reversed. The cause will be remanded to the district court of Lea County for further proceedings conformable to the views herein expressed.

It is so ordered.

HUDSPETH, C. J., and BICKLEY, BRICE, and ZINN, JJ., concur.