B. L. STEEN v. EDNA POPE SCOTT, *et vir.*

198 So. 489
Division B
Opinion Filed November 5, 1940
Rehearing Denied November 25, 1940

*Lawrence Rogers* and *G. P. Garrett,* for Appellant;

*Murray W. Overstreet* and *O. Preston Johnson,* for Appellees.

CHAPMAN, J.—On February 22, 1938, Edna Pope Scott, a married woman, the owner of certain designated business property situated in the town of St. Cloud, Florida, joined by her husband, Ira H. Scott, executed and delivered to A. B. McLean a lease thereon for a period of five years, yielding and paying to the owner the sum of $40.00 each month for two years and $50.00 each month for the remaining three years. The total amount stipulated to be paid as rental for the property for the five-year period was the sum of $2,760.00. The lease contained a provision that the demised property could not be sub-leased in part or the lease

assigned by A. B. McLean without the written consent of the owner lessors. It further provided that on the default of A. B. McLean to pay said monthly rents the lease would be broken and the owner granted the right to re-enter and retake the possession of the demised premises. The right and privilege of the owner to vacate and declare void the said lease was not reserved in the event of a sale of the demised property during the five-year period and a clause to that effect was *not* made a provision of the lease. The execution of the lease was acknowledged by the lessors and lessee before a notary public and signed and delivered in the presence of two witnesses. The certificate of the notary taking the acknowledgment of the parties to the execution of the lease failed to conform to Sections 5660 and 5676, C. G. L., in that a separate examination of Edna Pope Scott, a married woman, was not made, or if made, a certificate to this effect was not attached to the lease, it is asserted.

A. B. McLean, the lessee, went into the possession of the demised premises under the said lease and paid the stipulated monthly rentals until around March, 1939. He maintained a hardware store in the demised premises and in so doing incurred heavy obligations which deterred him in the payment of rent for March, 1939. This indebtedness was due in part to the manufacturers and wholesalers in hardware for hardware sold to him, and we infer from the record, on open account. He mortgaged his stock of hardware to B. L. Steen and was financially unable to pay the mortgage debt or the open accounts.

B. L. Steen filed suit to foreclose his mortgage and obligated himself to pay Edna Scott the rents due for March and April, 1939, on the demised premises under the terms of the lease. He likewise induced Ira H. Scott and wife

Edna Pope Scott, on April 17, 1939, to send to A. B. Mc-Lean the following:

"April 17, 1939.

"Mr. A. B. McLean,

"Dear Sir and Friend:

"Was just talking to Preston who informed me he was unable to pay rent for March or April and I take this opportunity to inform you that according to the terms of our lease the same is hereby declared null and void for non-payment of rent when due.

"I sincerely hope you may adjust your business so that you may again take it over, and in that event you may rest assured we will renew lease under existing terms.

"Sincerely yours,

"(Signed) I. H. Scott,

"Edna Scott."

The court appointed W. B. Strickland receiver in the foreclosure suit and he immediately entered upon his duties. B. L. Steen expressed the view that it would be necessary for him to bid in the stock of hardware at the foreclosure sale and negotiated with W. B. Strickland about the purchase of the same after he (B. L. Steen) became the owner. The receiver paid the monthly rents for the months of April, May and June, 1939. The foreclosure was being contested by A. B. McLean when B. L. Steen concluded that it was to his financial interest to pay A. B. McLean the sum of $500.00 for all his right, title and interest in the stock and business and let a final decree be entered and a bill of sale obtained at a special master's sale to the stock of hardware. This agreement was carried out and Steen obtained a bill of sale to the hardware stock on August 7, 1939. He settled with the general creditors of the business for the sum of approximately 25 per cent of the indebtedness. He failed

to consummate the sale with W. B. Strickland as contemplated, but arranged with his son to join him and continue in the hardware business and to use the building described in the Scott-McLean lease.

Prior to the purchase of the stock, Steen talked with Ira H. Scott during the month of April, 1939, about a renewal of the Steen lease and this was agreed upon by the parties. Pursuant to this agreement and a few days prior to the purchase at the special master's sale B. L. Steen wrote Ira H. Scott, viz.:

"St. Cloud, Fla., July 26th, 1939.

"Dr. Ira L. Scott,

"Kent, Ohio.

"Dear Dr.:

"I have just returned from Orlando, and learned that you are supposed to be in Ohio, I did not know that you had returned. We are trying to get the store matter settled up, and was in Tampa yesterday on that business. It looks like we might be ready within the next ten days of having an order from the court, ordering a sale. And it now seems that I will be the one to go back in the business. In fact if there is no unforeseen change comes up, that will be the case. And in that case, Robert Lee, my son will come back and join me. He is in Helena, Arkansas, Distributor for the Gulf Oil Co., but has never liked his location which is off the main highway arteries of travel, hence looks like it had no special future and as he has always hoped to get back to Fla. in some way, ask suggested to me that since things have turned as they have as to the hardware, that I take it back and he and I operate it. However, no matter who is to run it or bid it in, that person will want to know that they have a building. Be that person me or some one else. Now as I understand, there is one month on which

there has been no rent paid, the month of March, which I told you I would see that you were protected on, and there will soon be the month of August. So I am asking you, in order that we may be ready for a sale, to make out a lease to me on the same terms and conditions of the McLean lease, for the unexpired term of said lease, and send either to me direct, or to the bank if you prefer, and upon receipt of same I will send you a check for the March and August rent if that is the unpaid amounts. Make the lease transferable, in case of death or for any other reason that I would not be the one to conduct the store, but as stated, there is no doubt that my present program as stated will be carried out. And the conditions are such that I am sure to be the one that will bid it in, even tho it is a court sale, but the method we are working on now, is that McLean steps out of the picture, and I go no further with my foreclosure, which is now in process. I will appreciate getting this without delay in order that the question of building might not hinder the opening of the store as soon as other matters are settled. As per our verbal agreement some time ago, I would like just such provisions in the lease that was in the McLean lease, that protects both the lessee and lessor. Pretty hot here today, but still sufficient rain.

"Resp't.

"(Signed) B. L. Steen."

The letter was received on July 31, 1939, by Ira H. Scott at Orlando, as he returned there from Ohio and the letter followed him.

On August 7, 1939, Steen bought the stock of hardware at the special master's sale, and on August 9, 1939, A. B. McLean assigned the Scott lease to B. L. Steen. On August 8, 1939, Steen paid to Scott rents under the McLean lease for the months of March, July and August, 1939, and the receipt given by I. H. Scott therefor is, viz.:

"St. Cloud, Fla., Aug. 8th 39

"Rec,d of B. L. Steen one Hundred and twenty dollars, being rent in full to date for the months of March July and August 1939 on the A. B. McLean lease at 918 New York Ave., St. Cloud, Fla.

"I. H. Scott."

I. H. Scott, husband of Edna Pope Scott, after the oral agreement with Steen made in April, 1939, about a continuance or renewal of the lease on the buildings and pursuant to which Steen wrote him on July 26, 1939, prior to the purchase of the stock at the special master's sale or the payment of money to the general creditors on the part of Steen, contacted W. B. Strickland on August 1, 1939, about the sale to him of the buildings and the negotiations reached their culmination in an agreement to sell dated August 7, 1939. On August 11, 1939, contract of sale was signed by I. H. Scott and wife, Edna Pope Scott, to W. B. Strickland. The agreed purchase price was $7,000.00, with a cash payment in the approximate sum of $500.00.

B. L. Stein took possession of the stock, paid the general creditors and continued to operate the business in the buildings described in the lease and owned by Edna Pope Scott. On August 14, 1939, W. B. Strickland and wife, Grace Y. Strickland, wrote B. L. Steen, viz.:

"August 14, 1939.

"Mr. B. L. Steen

"City

"Dear Mr. Steen:

"Re: Lots One, Two and Three
of Block 130, City.
Hardware Buildings.

"As you know we have purchased the above property known as the Steen Hardware store property and desire

possession on September 1st, 1939. You are hereby notified to vacate said premises on that date, September 1st, 1939.

"Very truly yours,

"W. B. Strickland

"Grace Y. Strickland

"W. B. Strickland

"Grace Strickland."

Rentals were paid, or payment thereof tendered, by B. L. Steen to W. B. Strickland or Edna Pope Scott, as the same matured and became payable under the terms of the Scott-McLean lease. On September 20, 1939, Edna Pope Scott filed suit in the County Court of Osceola County against B. L. Steen seeking his removal from the demised premises. It was contended that the Scott-McLean lease dated February 22, 1938, was void and unenforceable because the same lacks a certificate of a notary to the effect that Edna Pope Scott, a married woman, separately and apart from her husband acknowledged the execution of the lease as required by Section 5676 C. G. L.

On November 17, 1939, while the suit was pending for removal of tenant and prior to a decision thereof, B. L. Steen filed in the Circuit Court of Osceola County, Florida, an amended bill of complaint against the parties maintaining the removal-of-tenant proceedings, and others, on the theory that the Scott-McLean lease, which was assigned to plaintiff B. L. Steen, was a binding obligation on Edna Pope Scott and husband I. H. Scott, and that plaintiff had paid and Edna Scott had received the monthly rentals thereunder; and further that the owner had agreed in April, 1939, to continue McLean and B. L. Steen in the occupancy of the buildings and that Steen was induced to believe, pursuant to said promises and the acceptance of the monthly rentals under the lease, the lease would be continued, or that a

lease could be executed and delivered to conform to the oral promise made in April, 1939, to renew or continue the Scott-McLean lease or to execute such a lease as would be satisfactory, and as a result of such belief he obligated himself to pay and did pay money with which to satisfy the McLean creditors and as a result of the promise to lease, the plaintiff purchased the stock of hardware at the special master's sale, thinking and believing he would be secure and the Scotts would carry out their agreement previously made whereby plaintiff could use the buildings for a hardware store, as the stock of hardware would be a loss without the buildings, which was well known to Edna Pope Scott and I. H. Scott, and that by their acts and conduct are each now estopped as a matter of law from the prosecution of the removal-of-tenant proceedings in County Court of Osceola County, and that Edna Scott is likewise estopped as a matter of law from asserting in any court that the Scott-McLean lease dated February 22, 1938, is invalid and void.

A temporary restraining order was issued, answers filed and testimony taken, and the lower court on final hearing dissolved the restraining order previously issued and held that the amended bill of complaint was without equity and the removal-of-tenant proceedings did not involve the title to real estate and the plaintiff's testimony as to equitable estoppel was legally insufficient. The court in the same order dismissed the amended bill of complaint and an appeal therefrom has been perfected to this Court.

It is not necessary for a decision of this case to pass upon the sale of the demised premises to W. B. Strickland by Edna Scott and husband, because he was appointed receiver in the foreclosure proceeding and operated the hardware business and paid monthly installments of rent to the Scotts. He had knowledge of the terms and provisions of the Scott

and McLean lease and that B. L. Steen had purchased the stock of hardware at the foreclosure sale on August 7, 1939, and on said date Strickland paid a binder and agreed to buy from the Scotts the demised premises and the trade was fully closed on August 11, 1939. It cannot be contended on this record that Strickland did not have knowledge of the lease dated February 22, 1938, and the different terms and provisions thereof, whether valid or invalid.

It appears that the question to be decided by this Court is whether or not the lease dated February 22, 1938, from Edna Pope Scott and husband to A. B. McLean, and by A. B. McLean assigned or transferred to B. L. Steen, is a binding obligation. It is difficult to reconcile the conduct and attitude of the parties in operating under the lease and thereby recognizing and observing its legal and binding effect from date of execution and delivery until the demised premises were sold to W. B. Strickland and closed on August 11, 1939, when it became manifestly apparent to the interest of the Scotts, in order to carry out the terms of their trade, that they should deliver the possession of the property to Strickland and in so doing it was necessary to evict B. L. Steen from the premises and from whom they had accepted $120.00 as rent on the property for the months of March, July and August, 1939, under the terms of the Scott-McLean lease. It was at this point that sufficient legal reasons were in demand to accomplish this end. They concluded: (a) that the lease had been cancelled by the notice to McLean by the Scotts dated April 17, 1939, but this notice was legally insufficient to effect cancellation under Subsection 2 of Section 5399 C. G. L., coupled with the evidence showing subsequently a ratification thereof wthout reservation and by accepting rentals maturing thereunder; (b) that the lease is invalid and void because the notary failed and omitted to certify that Edna Pope Scott,

a married woman, separate and apart from her husband, as required by Section 5676, C. G. L., acknowledged the execution of the lease; rents were received under the lease and the lessors failed to complain until they desired an eviction from the premises. See: 35 C. J., p. 1154, par. 414, viz.:

"Effect of Failure to Attest or Acknowledge.—Notwithstanding statutory provisions for attestation and acknowledgment, in most jurisdictions a lease is not rendered invalid by the want of attestation or acknowledgment. But in some jurisdictions it is held that an instrument which is not properly attested or acknowledged, as prescribed by statute, is inoperative as a lease, even as between the parties thereto, and third persons with actual knowledge of its execution. An attorney at law for one of the parties is not disqualified or incompetent to attest as a subscribing witness, even though the lease is beneficial to his client. In the absence of an agreement a party has no absolute right to designate the person who will witness the signature of the other party."

(c) The oral promise made by the Scotts to Steen in April, 1939, wherein they agreed to lease him the property when he became the owner of the stock of merchandise was conditioned, "provided they did not sell the same." The lease as written failed to carry such a provision and comes into the picture only when the Scotts are trying to evict Steen.

In the case of New York Life Insurance Co. v. Oates, 141 Fla. 164, (text pp. 175-6), 192 So. 637, on the question of equitable estoppel and its application to married women, this Court said:

"The doctrine of estoppel was administered by the courts at common law. See Doe v. Cropper, 10 Adolph. & Ellis 90; Savage v. Foster, 9 Mod. Reports 35. Its proper ap-

plication is not violative of, but is consistent with, the Constitution and statutes of Florida.

" 'The doctrine of estoppel is a part of the common law that is in force in this State and it should be appropriately applied when the facts in a litigated case justify it.' State v. Green, 88 Fla. 249, 102 So. 739, A. L. R. 1398.

"The principles of estoppel have long been applied in apropriate proceedings by the courts of this State as a part of the established jurisprudence.

" 'While other classes of estoppels have not received much or great favor from the courts, those *in pais* have been much extended and received a liberal, enlarged and, we might add, an enlightened construction. The technicalities incident to estoppels are gradually giving way to considerations of reasons and practical utility, and the courts of the present day seem disposed to give force and efficacy to a doctrine which is based upon principles of justice and the purest morailty.' Camp v. Moseley, 2 Fla. 171, text page 197.

" 'Married women in proper case may be estopped by her conduct concerning execution and acknowledgment of instruments affecting real estate in which she is interested.' Headnote 9, New York Life Ins. C. v. Oates, 122 Fla. 540, 166 So. 269; McClure v. Am. Nat. Bank, 67 Fla. 32, 64 So. 427.

" 'The law of estoppel may be briefly' stated 'as follows:

" '1. Words and admissions, or conduct, acts and acquiescence, or all combined, causing another person to believe in the existence of a certain state of things.

" '2. In which the person so speaking, admitting, acting and acquiescing, did so willfully, culpably or negligently.

" '3. By which such other person is or may be induced to

714

act so as to change his own previous position injuriously.' (Coogler v. Rogers, 25 Fla. 853, 7 So. 391.)

"'See also Warner v. Watson, 35 Fla. 402, 17 So. 654; Johnson v. Elliott, 64 Fla. 318, 59 So. 944; First Nat. Bank v. Ashmond, 33 Fla. 416, 14 So. 886,' New York Life Ins. v. Oates, 122 Fla. 540, text 559, 166 So. 296.

"'Where the facts of the particular case warrant it, the doctrine of estoppel may be applied to married women, with reference to conveyances of their own separate property.' Headnote 1, Johnson v. Elliott, 64 Fla. 318, 59 So. 944."

It is our conclusion that the chancellor failed or omitted to apply the foregoing rule of equitable estoppel to the facts adduced, thereby resulting in reversible error. The order or decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.