150 So.2d 477 (1963)
Marie RICHARDS, Appellant,
v.
Elizabeth DODGE and James Dodge a/k/a R.J. Dodge, d/b/a Prospect Hall School, Appellees.
No. 3177.
District Court of Appeal of Florida. Second District.
February 13, 1963.
Rehearing Denied March 15, 1963.
*479 R.T. Shankweiler and Wynne M. Casteel, Jr., Fort Lauderdale, for appellant.
Marvin L. Lessne, Rassner & Lessne, Fort Lauderdale, Max A. Goldfarb, Winter & Goldfarb, Miami, for appellees.
ALLEN, Judge.
Appeal is brought by the plaintiff from a final judgment entered against her on her complaint for unpaid rent under a lease. Said judgment was in favor of plaintiff on defendants' counterclaim for breach of covenant. There was, however, no cross-assignment of error by defendant-appellees and only the judgment against plaintiff-appellant is of concern on appeal.
Plaintiff sued the defendants for nonpayment of rent pursuant to a written lease entered into between them for the period September 1, 1960, to August 1, 1961. The leased premises, an apartment house, were to be used as living quarters for girls attending the school owned by defendants. A two bedroom apartment, occupied by plaintiff at the time the lease was executed, was expressly excepted from the lease and reserved to plaintiff.
It was stipulated in advance of trial that rental payments for the months of May, *480 June and July, 1961, totaling $3,270.00 were unpaid. Execution of the lease was also stipulated.
In response to plaintiff's complaint defendants affirmatively raised breach of covenant in the answer, alleging that plaintiff breached the lease in several particulars. Specifically, defendant alleged a constructive eviction and consequent breach of a covenant of quiet enjoyment by plaintiff's leasing her apartment to a male tenant. Defendants further alleged breach of the duty to repair and render habitable and a failure to provide linens as provided in the lease. Counsel for both parties in their briefs and arguments on appeal seem to have concluded that the first alleged breach was the basis for the judgment, a conclusion which the record on appeal indicates is entirely correct. Accordingly, the questions on appeal all revolve about the vacating and leasing of plaintiff's apartment as a breach of covenant.
It is undisputed that defendants executed the lease, went into possession of the premises and continued in possession until May 1, 1961. On that date they vacated the premises, although three months remained during which they were obligated under the lease. In answering the complaint for the unpaid rent for these three months, defendants alleged and attempted to prove that plaintiff, in vacating her apartment in January, 1961, violated a parol agreement to act as a "housemother" and, in leasing her apartment to a male tenant, constructively evicted defendants and breached the implied covenant of quiet enjoyment.
Plaintiff denied the existence of a parol agreement and contended that there had been no breach of covenant, or, if there was, that defendants were estopped to complain by virtue of the fact that the male tenant went into possession in early February, 1961, but that defendants continued to pay rent through April and did not complain that the male tenant was offensive or give any notice of dissatisfaction until April 13, 1961  a little more than two weeks before vacating. Even this notice, a letter from defendants' attorney, merely announced defendants' unilateral rescission of the lease and did not state with any particularity the facts constituting the supposed breach of covenant. Apparently, after receiving the letter, plaintiff did ascertain by phone that the male tenant's presence was the cause of rescission.
On complaint, answer and counterclaim, the case went to trial before the judge without a jury. Judgment was entered for defendants on plaintiff's complaint. Plaintiff's motion for new trial, or amended judgment, was denied and this appeal taken.
Since the trial judge did not, in his judgment, make any findings of fact or conclusions of law  the inclusion of which, though not required, is of estimable aid to an appellate court, Dworkis v. Dworkis, Fla.App. 1959, 111 So.2d 70, 72 A.L.R.2d 1189  it must be assumed that he found, as a matter of fact and law, that there had been a breach of covenant or constructive eviction and that there had been no waiver of rights by failure to give notice. It must further be assumed that he found there to have been an enforceable parol agreement and a breach thereof. The validity of these findings and the consequent holdings and judgment constitute the subject matter of this appeal.
The appellees raise certain procedural errors which we have studied and determine are without merit. Accordingly, the motion to dismiss is denied.
Turning to the merits of the appeal, it appears that two real issues are presented, the validity of the finding of a constructive eviction and the validity of the finding that defendants had not waived their rights arising from the breach of covenant occasioned by the constructive eviction. At the outset, it should be noted that the questions of constructive eviction and waiver are questions of fact determinable by the trier of fact in light of the appropriate principles of law. Adelhelm v. *481 Dougherty, 1937, 129 Fla. 680, 176 So. 775; Stephenson v. Stephenson, Fla. 1951, 52 So.2d 684; Carner and Sobel v. Shapiro, Fla. App. 1958, 106 So.2d 87; 52 C.J.S. Landlord and Tenant § 460 (1947); 32 Am.Jur., Landlord and Tenant, § 246 (1955). In cases like the instant case, tried without a jury, the lower court's findings are entitled to the weight of a jury verdict and will not be disturbed unless there is a total lack of substantial evidence to support the trial judge's findings. Ross v. Florida Sun Life Insurance Co., Fla.App. 1960, 124 So.2d 892. However, misinterpretation of the legal effect of the facts so found can result in reversible error. Holland v. Gross, Fla. 1956, 89 So.2d 255, 63 A.L.R.2d 920. Finally, while it is true that when no findings of fact are made the appellate court must accept the facts most shown by the evidence to be favorable to the prevailing party below, Coble v. Agnew, Fla.App. 1961, 128 So.2d 158, this does not mean that the appellate court must disregard uncontroverted evidence favorable to the appellant.
As indicated earlier, the lower court apparently found that plaintiff-appellant, in vacating her apartment and/or leasing it to a male tenant, constructively evicted defendant-appellees. A "contructive eviction," as distinct from actual eviction, is an act, which, though not amounting to actual eviction, is done with the express or implied intent of essentially interfering with the tenant's use and enjoyment of the premises. The requisite intent can be implied or presumed from the act's effect. Hankins v. Smith, 1931, 103 Fla. 892, 138 So. 494. Generally, abandonment of the premises within a reasonable time after the landlord's wrongful act is a necessary element of constructive eviction. See 32 Am.Jur., Landlord and Tenant, §§ 245-264 (1955); 52 C.J.S. Landlord and Tenant §§ 455-459 (1947); Annot. 75 A.L.R. 1114 (1931). Constructive eviction can constitute a breach of the covenant of quiet enjoyment implied in a lease. Hankins v. Smith, supra; 20 Fla.Jur., Landlord and Tenant, § 51 (1958); Annots. 62 A.L.R. 1257 (1929), 172 A.L.R. 18 (1948), 41 A.L.R. 2d 1414 (1955).
Having found a constructive eviction, the court apparently found that defendants had not waived any rights against plaintiff arising from the eviction and consequent breach of covenant. The doctrines of waiver and estoppel have long been recognized in Florida, Masser v. The London Operating Co., 1932, 106 Fla. 474, 145 So. 72; Steen v. Scott, 1940, 144 Fla. 702, 198 So. 489, and are applicable against either party to a lease. Farmers' Bank and Trust Co. v. Palms Publishing Co., 1923, 86 Fla. 371, 98 So. 143; Macina v. Magurno, Fla. 1958, 100 So.2d 369.
In the latter case, the Supreme Court of Florida said:
"In Masser v. London Operating Co., 1932, 106 Fla. 474, 145 So. 72, 79, this court said that while waiver, being the intentional relinquishment of a known right, does not arise from forebearance for a reasonable time, it might be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. Further, it was said that where the conduct of the party is such as to create an estoppel no consideration for the waiver is necessary." (100 So.2d at 373.)
The "conduct * * * such as to create an estoppel * * *" necessary to a waiver consists of willful or negligent words and admissions, or conduct, acts and acquiescence causing another to believe in a certain state of things by which such other person is or may be induced to act to his prejudice. Coogler v. Rogers, 1889, 25 Fla. 853, 7 So. 391. Steen v. Scott, 1940, 144 Fla. 702, 198 So. 489. The acts or conduct need not be positive, but can consist of failure to act or, more particularly, failure to speak when under some duty to speak. Thomas v. Dickinson, 1947, 158 Fla. 819, 30 So.2d 382. See 12 Fla.Jur., Estoppel and Waiver, 997, 42-46 (1957).
*482 Examining the facts adduced on trial in light of the above enunciated legal concepts of "constructive eviction" and "waiver" the conclusion that the lower court erred in entering judgment for defendants is inescapable.
Insofar as plaintiff's alleged violation of a parol agreement to act as housemother is concerned, it seems clear that this, as a matter of fact or law, could not constitute a constructive eviction as heretofore defined  and that such rights as may have accrued to defendants by virtue of the alleged violation were unquestionably waived.
The record reveals that defendants were dissatisfied with plaintiff's activities as housemother, felt her incompetent in this respect and secured a replacement even before plaintiff vacated her apartment. This replacement continued in the capacity of housemother after the premises were vacated and new quarters secured. Accordingly, it would seem clear that plaintiff's alleged failure did not so impair the use of the premises as to constitute constructive eviction. The record further reveals that at some time after the replacement was secured, defendants and plaintiff reached an agreement whereby the monthly rent was reduced to offset defendants' expenses in securing maid and cleaning service. The record does not indicate that defendants objected to plaintiff's vacating her apartment or complained of this until this suit was filed.
In light of defendants' activity prior to plaintiff's vacating her apartment, their agreement with her after that time and the absence of complaint to her vacating, such rights as may have accrued were waived.
Insofar as plaintiff's leasing her vacant apartment to a male tenant is concerned, the evidence and reasonable inferences therefrom are conflicting as to this having so impaired defendants' use of the premises as to constitute constructive eviction. In finding a constructive eviction, the lower court apparently resolved any conflict in defendants' favor. Similarly, the reasonableness of the 3 month delay in defendants' vacating was resolved in defendants' favor. These are essentially and entirely questions of fact and the lower court's findings are accepted when supported by substantial evidence. In light of the disposition of other and controlling issues, it is unnecessary to pursue inquiry as to the substantiality of the evidence and the findings of constructive eviction can be assumed correct.
There remains for consideration the apparent holding that the defendants had not waived the right to complain of constructive eviction by reason of the male tenant's presence. Recapitulating, waiver, insofar as the instant case is concerned, would consist of defendant's relinquishment of a known right by failure to act while under a duty to act, thereby causing plaintiff to act to her prejudice.
Assuming for the moment that there existed knowledge of the right, a duty to act and a failure to act, it is clear that plaintiff was caused to act to her prejudice. The specific prejudicial act was the continued maintenance of the male tenant in the vacant apartment  an act which was the basis for the allegation of breach of covenant and the abandonment of and loss of rent for the apartments.
Similarly, it is clear that the requisite knowledge on the part of the defendants existed. Although the testimony conflicts as to when the defendants learned of the male tenant's presence and though defendants' answer indicates they were only aware of the tenant's presence in April, 1961, it is clearly established that the male tenant took possession in early February and that the housemother employed by defendants knew of his presence in February. Since the housemother was employed for the express purpose of supervising the premises, such knowledge as she had concerning the premises  and their suitability for use  is imputed to her employer. *483 Breeding's Dania Drug Co. v. Runyon, 1941, 147 Fla. 123, 2 So.2d 376.
The third element of the waiver, a failure to act, is equally apparent. During the period from February to April, 1961, while the male tenant's presence was allegedly rendering the premises unusable, defendants never communicated their objection to his presence to plaintiff. Notwithstanding the fact that they forwarded the rent at appointed times, they never, as part of that transaction or otherwise, indicated objection to the male tenant. Indeed, plaintiff did not learn of defendants dissatisfaction until after they had rescinded the lease and announced an intention to seek reimbursement for alleged damages. The evidence is uncontroverted  and it is admitted  that plaintiff learned of defendants' dissatisfaction only upon making inquiry herself and only after defendants rescinded. Although defendants seem to insist that a letter of April 13, 1961, informing plaintiff that defendant rescinded and a letter of April 24, 1961, announcing the date at which the premises would be vacated, served as notice of defendants' objection to the male tenant  neither letter mentions the male tenant or the effect of his presence.
In summary, not only does the evidence demonstrate the existence of the requisite knowledge, failure to act and consequent prejudice, but there is no substantial evidence to the contrary. Apparently and necessarily the lower court's decision turned on the fourth element of waiver, the existence of a duty on defendants' part to act, to notify plaintiff on their objection to the male tenant's presence.
In attempting to determine if a duty to notify the landlord existed, it should be kept in mind that the defendants claim constructive and not actual eviction and that they claim breach of an implied covenant and not an express covenant. It should be noted too that defendants and the court below felt that the nature of the covenant and rights under it were ambiguous and ascertainable only by parol evidence.
While no case precisely on point has been discovered, persuasive authority in analogous areas impel the conclusion that a duty to notify the plaintiff landlord existed. The general rule concerning demand for performance as a prerequisite to an action for breach of covenant is set forth in 21 C.J.S. Covenants § 88 (1940) as follows:
"Notice of breach and demand of performance are not required of the covenantee in order to entitle him to an action against the covenantor upon breach of his covenant, unless the event upon which the action accrues is mainly or exclusively within the knowledge of the covenantee * * *." (Emphasis added.)
Similarly, although with respect to covenants running with the land, it is apparently the accepted rule that no cause of action for breach arises until notice or demand for performance is given. This is stated in 14 Am.Jur., Covenants, Conditions and Restrictions, § 37 (1938) as follows:
"* * * Covenants which are continuing in their character, such as a covenant to keep a retaining wall in repair * * * are not affected by the statute of limitations until after the covenantor refuses to repair or renew as the case may be."
Demand for performance is a necessary prerequisite to breach insofar as affirmative covenants are concerned. 14 Am.Jur., Covenants, Conditions and Restrictions, § 37 (1938, suppl. 1962); 17 A.L.R.2d 1252-1256 (1951).
With regard to particular breaches of covenant, notice and demand for performance are usually necessary. Thus, a landlord can not declare a forfeiture for non-payment of rent prior to demanding payment. Baker v. Clifford-Mathew Investment Co., 1930, 99 Fla. 1229, 128 So. 827; see 20 Fla.Jur., Landlord and Tenant, § 133 (1958). Conversely, a tenant cannot declare termination of a lease *484 for breach of covenant to make repairs unless the landlord is notified of the need for repairs. See Tedstrom v. Puddephat, 1911, 99 Ark. 193, 137 S.W. 816, Ann.Cas. 1913A 1092. See too 51 C.J.S. Landlord & Tenant §§ 113, 114 (1947).
When a landlord has covenanted to make repairs, notice of the need for repair is requisite to liability for breach of the covenant. 32 Am.Jur., Landlord and Tenant, § 710 (1955). As the author of the latter encyclopedia explains:
"This rule, requiring a tenant to give notice to the landlord of the want of repair * * * springs from the special knowledge which the tenants occupancy of the premises is presumed to give him, coupled with the state of ignorance in which the absence of such occupancy is presumed to leave the landlord."
An examination of recent Florida cases discloses no departure from this rule. See Propper v. Kesner, Fla. 1958, 104 So.2d 1; Wallace v. Schrier, Fla.App. 1958, 107 So.2d 754; Wiley v. Dow, Fla.App. 1958, 107 So.2d 166; Moore v. O'Conner, Fla.App., 1958, 106 So.2d 606.
The factor of notice is also significant in cases involving breach of the covenant of quiet enjoyment by reason of an adverse title, paramount to that of the landlords. While notice of the pendency of the suit is not a prerequisite to a cause of action for breach, the tenant is precluded from asserting the adverse judgment and must prove the paramount title in the subsequent suit for breach of covenant, unless the landlord was notified of the adverse claim. See 21 C.J.S. Covenants §§ 89-92 (1940); 14 Am.Jur., Covenants, Conditions and Restrictions, § 65 (1938); 32 Am.Jur., Landlord and Tenant, § 286 (1941). The rationale of this rule is simply that the landlord cannot be bound, in an action for breach, by adverse facts of which he had no knowledge and against which he was not able to defend.
Finally, there is ample authority for the rule that notice of and an opportunity to rectify conditions allegedly constituting constructive eviction are a prerequisite for any action based on the alleged eviction. 32 Am.Jur., Landlord and Tenant, §§ 259, 263, 264 (1941 suppl. 1962); 51 C.J.S. Landlord and Tenant § 323c(1) (1947); 52 C.J.S. Landlord and Tenant § 458 (1947). Accordingly, notice to the landlord has been found to be an essential element of constructive eviction by reason of failure to repair; Tedstrom v. Puddephat, 1911, 99 Ark. 193, 137 S.W. 816; failure to provide heat, Russell v. Olson, 1911, 22 N.D. 410, 133 N.W. 1030, 37 L.R.A., N.S., 1217; failure to provide electricity or water, Curry v. Coyle, 1921, 115 Misc. 422, 189 N.Y.S. 65; failure to rid premises of vermin, California Bldg. Co. v. Drury, 1918, 103 Wash. 577, 175 P. 302; Wainwright v. Helmer, N.Y.App. 1922, 193 N.Y.S. 653; and of failure to abate offensive, illegal or immoral conduct by other tenants, Cushman & Co. v. Thompson, 1908, 58 Misc. 539, 109 N.Y.S. 757; Central Home Trust Co. v. Walsh Bakeries and Restaurants, 1933, 11 N.J. Misc. 161, 165 A. 107.
Indeed, the one case found which held that the tenant had no duty to notify the landlord of the offensive fact, Milheim v. Baxter, 1909, 46 Colo. 155, 103 P. 376, qualified this holding by pointing out that the landlord could not have failed to know of the immoral purposes for which the adjacent premises were used  accordingly notice would be superfluous.
The foregoing authority and the reason underlying the requirement of notice or demand compel the conclusion that the defendant-appellees in the instant appeal had a duty to notify plaintiff-appellant of their objection to the male tenant.
A tenant who alleges constructive eviction by virtue of acts which fall short of actual eviction, are not patently immoral or illegal, are not expressly forbidden by *485 the terms of the lease, and are susceptible to remedy, should and must give timely notice to the landlord of the objectionable act and demand rectification. Failing in this duty, the tenant cannot be heard to complain of the acts in defense to an action for rent.
Defendant-appellees having so failed, the trial judge's entry of judgment for them was error, and is reversed for entry of judgment in favor of the plaintiff-appellant.
Reversed.
SHANNON, C.J., and HORTON, MALLORY, Associate Judge, concur.