338 So.2d 569 (1976)
H.S. HAMILTON, Appellant.
v.
TITLE INSURANCE AGENCY OF TAMPA, INC., Appellee.
TITLE INSURANCE AGENCY OF TAMPA, INC., Appellant,
v.
H.S. HAMILTON, Appellee.
Nos. 75-765, 75-803.
District Court of Appeal of Florida, Second District.
October 27, 1976.
*570 Marjorie D. Gadarian of Jones, Paine & Foster, West Palm Beach, for appellant-appellee H.S. Hamilton.
John W. Frazier of Peavyhouse, Giglio, Grant, Clark & Charlton, Tampa, for appellant-appellee Title Ins. Agency.
HOBSON, Judge.
These are consolidated appeals from a final judgment ordering the defendant, Title Insurance, to return $12,500 of a $25,000 earnest money deposit, paid by the plaintiff, Hamilton, pursuant to a real estate contract, and allowing Title Insurance to keep the remaining $12,500. The trial court held both parties at fault for the failure of the contract. We reverse.
On September 10, 1973, Hamilton contracted with Title Insurance to purchase certain real estate in Temple Terrace, Florida for $500,000. The contract reveals this land was to be utilized to build some 295 dwelling units. The contract further provided for the plaintiff to pay a $25,000 earnest money deposit, to be made at execution, and another payment in like amount was to be made within 90 days. Section seven of the contract specifically made the closing of this sale contingent upon the purchaser/plaintiff's ability to secure building permits for the units. Failure to obtain such permits required the seller/defendant to return both deposits. In addition to the contingency of obtaining building permits,[1] section seven further provided "[T]hat this contract is contingent upon the fact that there shall be water and sewer to the property line at no cost to the Purchaser."[2]
In late September of 1973, the plaintiff hired a civil engineering firm to prepare plans and specifications for the development. This engineering firm was to prepare preliminary plans for water and sewage facilities and to make application for the necessary approvals to state and local health departments, pollution control units and the City of Tampa. In November of 1973 the plaintiff was advised that a sewer and water moratorium had just gone into effect. As a result of this moratorium, and following the engineering firm's application to water and sewage authorities, the plaintiff contacted the defendant, informing the latter of the problem and expressing that he was not in a position to pay the second earnest money installment of $25,000.
On December 17, 1973, the parties negotiated an addendum to the original contract which provided for payment of the second $25,000 installment on that date with refund of the same should the plaintiff fail to obtain the building permits by January 3, 1974.[3] The plaintiff failed to obtain the *571 necessary permits by the agreed upon date in the addendum. Even after this date the parties met and negotiated in an attempt to complete the purchase agreement. The moratorium having blocked successful acquisition of the building permits, the plaintiff demanded a return of the deposit. Upon refusal by the defendant this suit was instituted.
It is clear from the language of the contract ("[I]n the event such building permits are not secured ... the two (2) earnest money deposits ... each shall be returned ..."), as modified by the addendum ("In the event that the purchaser is unable to obtain the said permits ... the seller agrees to refund the ... deposit ...), that the entire contract's performance was dependent and conditioned upon the plaintiff's procurement of these permits.
Indeed the express condition precedent was contractually tempered with a provision for insuring the exercise of reasonable efforts and diligence by the plaintiff in seeking those permits. The issue for determination then is whether the plaintiff exercised such effort and diligence in attempting to secure these permits sufficient to justify the return of the $25,000 deposit specified in the addendum to the contract.
The parties have correctly asserted that one who prevents or makes impossible the performance or happening of a condition precedent, upon which his liability by the terms of a contract is made to depend, cannot avail himself of its nonperformance. Walker v. Chancey, 96 Fla. 82, 117 So. 705 (1928); Hart v. Pierce, 98 Fla. 1087, 125 So. 243 (1929). Such a situation is not presented here. In fact, the plaintiff, Hamilton, was expressly bound to use reasonable efforts and diligence in seeking these permits. Cf. Chancey, supra (recognizing implied obligation to use reasonable diligence). Here the record clearly reveals extensive and concerted efforts by Hamilton to obtain clearance for the building permits from the city. The actions taken by Hamilton immediately following execution of the original agreement, and up to and after the signing of the addendum, demonstrate a sincere desire to complete the contract as agreed upon. This conclusion is further evidenced by Hamilton's repeated attempts, after expiration of agreed upon date, to go forward with the contract by attempting to secure clearances with state and county health and pollution authorities.
The general rule, recited in 17 Am.Jur.2d, Contracts § 361, provides:
"Where parties capable of contracting deliberately enter into a written contract by which there is created a condition precedent to a right of action, such condition must be performed or its requirements waived or excused."
Similarly, Florida law requires that performance of conditions precedent, or a valid excuse for nonperformance, be made to appear. Ballas v. Lake Weir Light & Water Co., 100 Fla. 913, 130 So. 421 (1930); Maryland Casualty Company v. Hallatt, 295 F.2d 64 (5th Cir.1961).
Although neither party has argued that the doctrine of impossibility of performance *572 is applicable to the instant case, and while we agree with that premise,[4] the moratorium passed subsequent to execution of the original contract, and continuing up to and past the allotted times for performance of the condition precedent, was sufficient to render Hamilton's nonperformance excused. This conclusion is strengthened by the language in the original contract, "[I]n the event such building permits are not secured ..." and the addendum, "In the event that the purchaser is unable to obtain the said permits... ." Both of these contract provisions clearly contemplate that the defendant assumed the risk of subsequent governmental interference.
Furthermore, no evidence suggests that the parties were informed of this moratorium prior to or at the time of contracting. Since neither party can be held to have foreseen this subsequent interference, then no reason exists for shifting the burden of this risk as allotted by the parties in their contract and the addendum.
We recognize that in cases tried without a jury a lower court's findings are entitled to the weight of a jury verdict and must not be disturbed unless there is a total lack of substantial evidence to support the trial judge's findings. Richards v. Dodge, 150 So.2d 477 (Fla.2d DCA 1963). However, misinterpretation of the legal effect of the facts so found can result in reversible error. Richards, supra. Here there was no substantial evidence to support the lower court's judgment that both parties were equally at fault. Such a conclusion was clearly error where the record plainly demonstrates that nonperformance of the condition precedent to the contract was not attributable to either party. Furthermore, after the excuse for nonperformance developed, the plaintiff continued to seek governmental permission so that the contract could be completed. We think the lack of fault, as to the nonperformance of the condition, coupled with the continued attempts by Hamilton to meet contract terms, constitutes diligent and reasonable efforts to secure the building permits.
Accordingly, the judgment below is reversed and the trial judge is directed to order return of the remainder of the earnest money deposit ($12,500) to the plaintiff.
McNULTY, C.J., and SCHEB, J., concur.
NOTES
[1] Section 7.A. of the original contract made it mandatory on the plaintiff that he proceed in a timely manner to acquire the permits. That section provides in part,

"... It is further agreed and understood that the Purchaser shall diligently, upon execution of this contract, make every reasonable effort to secure the above mentioned building permits, and to close this transaction as quickly as possible after obtaining the same."
It is clear that this proviso, attached to the contingency of obtaining the permits initially, is bargained-for protection inuring to the benefit of the defendant since it requires a duty on the plaintiff to use best efforts.
[2] The defendant had investigated and determined that water and sewer were available for the property.
[3] The addendum provides,

"The Purchaser agrees to make application for building permits within 3 days from date of this Addendum. It is further agreed that the purchaser will request said permits to be issued by the City of Temple Terrace on or before January 3, 1974. In the event that the purchaser is unable to obtain the said permits by January 3, 1974, the seller agrees to refund the $25,000.00 deposit on that date. In the event that the permits are issued subject to any contingencies that interfere with completion of construction, the seller agrees to clear said contingencies before the closing date of April 8, 1974. The buyer agrees to cooperate by proper filing of any governmental requests in conjunction with efforts of seller to eliminate any such contingencies, at no cost to buyer. In the event that the seller can not clear these contingencies, then the seller agrees to return the $25,000.00 deposit and the contract would be considered null and void.
"In the event any such contingencies are complied with, then the purchaser agrees to close on or before April 8, 1974 and in the event he fails to do so the $25,000.00 will be in default and considered to be total liquidated damages.
"This contract is further amended to extend the closing date from March 8, 1974 to April 8, 1974. The Purchaser agrees to pay the Seller interest at the rate of 4% over prime interest rate as outlined in Paragraph 3d on the total purchase price of Five Hundred Thousand and no/100 Dollars ($500,000.00) as consideration for this extension."
[4] It is stated in 6 Corbin on Contracts, § 1349 (1962) that a valid moratorium by legislative or administrative act, is not a suspension of duty because of impossibility. See also 17 Am.Jur. Contracts § 419 (1964).