FRANK, RICHARD H., Associate Judge.
The instant breach of contract action is rooted in proceedings begun before the Department of Health and Rehabilitative Services, to acquire certificates of need for the creation of two 85-bed nursing homes in Broward County. We reverse.
The essential factual setting may be summarized as follows: The appellant, Federal Property Management Corporation (Federal), and the appellee, Richmond Healthcare, Inc. (Richmond), separately sought certificates of need from HRS permitting the construction of two 85-bed nursing homes. In the joint belief that one 170-bed nursing home would be a more profitable venture than would the operation of two separate 85-bed facilities, Federal and Richmond initiated negotiations with the objective of combining the separate certificates through either Federal’s or Richmond’s purchase of the certificate held by the other. The efforts leading to a contract for the sale and purchase of the certificates were undertaken by Richmond’s attorney, Coker, and Federal’s vice president and attorney, Bivens. Ultimately, Richmond agreed to sell its certificate to Federal for $340,000. A contract, executed by Bivens and Richmond’s president, All-good, provided that it would be “void if the Department of Health and Rehabilitative Services, Office of Community Medical Facilities, does not approve the transfer of Certificate of Need No. 2192 from [Richmond] to [Federal] within 90 days from the date of this contract and in no event later than July 15, 1986.”
At the moment when the contract was bilaterally executed, neither Federal nor Richmond had actual possession of a certificate. Federal and Richmond sought initially to have the certificates issued in a consolidated form but HRS would not grant a consolidated single certificate to Federal. Thus, once the individual certificates were issued, Federal, acting through Bivens, was to file an application urging HRS to approve expeditiously the transfer of Richmond’s certificate to Federal.
*759 Bivens apparently realized in June of 1986 that the expedited review would not be accomplished by the July 15 date. Thus, he discussed the time factor with Coker who stated, “Allgood was an honorable man and he just wanted his money, let’s do the deal.” It was not until July 2 that Richmond was issued its certificate, and on August 5 it was sent to Federal by Coker with a letter asking Bivens to “[pjlease copy me with all correspondence and other submittals relating to the consolidation of the GON’s.” Federal had received its certificate on July 24, 1986. Bivens compiled the necessary data, submitted the expedited review application to HRS on August 20 and sent a copy of the document to Coker. Neither Coker nor Allgood responded to the material received from Bivens and there was no communication by anyone associated with Richmond indicating that the contract was at an end by its express terms or that the consolidation process should be halted.
On August 11, 1986, Coker spoke with Allgood relative to the developments to that point and Allgood prepared a memorandum to the file, which stated in pertinent part:
Talked with Dick Coker this afternoon, August 11, 1986. He said we still have a “contract” with Federal Properties, and they are pursuing it_ Dick is to contact the attorney for Federal Properties in Tallahassee and also HRS to see what the posture of this possible consolidation is. I told him that if the consolidation could be achieved immediately, we might go through with it, but if there was to be any significant delay, we might as well cancel these discussions.
In the period following August 11, Coker and Bivens continued to communicate to accomplish the sale of Richmond’s certificate to Federal. On September 15, 1986, Coker directed a letter to Bivens announcing that Richmond had entered into an agreement to sell Richmond, including its certificate, to Meridian.
Bivens reacted to Coker’s letter by telephone, asking what the effect of the Richmond-Meridian agreement was upon the Federal-Richmond contract. Coker stated that he would check with Allgood and respond to Bivens; Coker did not again communicate with Bivens. In the meantime, the HRS consolidation process was moving forward, but on or about October 10, 1986, prior to approval, a new law firm appeared on the scene representing Richmond and it advised HRS that Richmond did not agree to a merger of the certificates. HRS notified Richmond and Federal that the expedited review was terminated. Thereafter, on November 11, Bivens called Allgood and stated that Federal had a right to Richmond’s certificate and that an action would be initiated to enforce that right. Allgood asserted that Coker did not have the authority to extend the contract beyond the July 15 date. Nonetheless, Bivens and All-good continued discussions in an attempt to resolve Federal’s threat of a lawsuit. Indeed, Allgood sent a letter to Bivens in which he stated that Richmond was prepared to enter a new agreement based upon Bivens’ offer to increase the purchase price to $365,000. Bivens and Allgood met but were unsuccessful in reaching a new agreement. At that point Federal sued Richmond for breach of contract. After a bench trial, the court entered a final judgment against Federal.
In reviewing the trial court’s unexplicat-ed final judgment, we have not been unmindful of the principle that the appellate court’s role is not to reevaluate the evidence and substitute its judgment for that of the trial court as long as there is sufficient competent evidence to support the trial court’s decision. Ocean View Towers, Inc. v. First Fidelity Savings and Loan Association, 521 So.2d 325 (Fla. 4th DCA 1988). Here, however, we have not been favored with a final judgment or order containing any findings of fact or conclusions of law — the presence of which we acknowledge are not required — that would be of substantial value in fulfilling the review function.[1] See Richards v. Dodge, *760 150 So.2d 477, 480 (Fla.2d DCA 1963). Thus, we must assume that the trial court determined as a matter of fact and law that Richmond did not breach its agreement with Federal. In order to reach that result, the trial court must have concluded that the Federal-Richmond contract ended by its terms and was not extended by any act of Richmond or its agents. The record discloses no competent evidence to support that determination. To the contrary, we find substantial evidence warranting the conclusion that the contract survived the July 15 termination date and that Richmond’s behavior constituted a breach.
Our review of the record with an eye toward attempting to support the trial court’s final judgment indicates that the only evidence supporting the notion that the critical date was not extended is (1) the contract containing the deadline of July 15, (2) Allgood’s assertion at trial that he considered the contract to have expired on July 15 when consolidation of the two certificates had not taken place, and (3) Coker’s testimony that he never specifically discussed an extension with Bivens and never told him that he could bind Richmond. Three documents refute Allgood’s contention that he considered the contract terminated on July 15: (1) his letter dated July 26, (2) Coker’s letter to Bivens dated August 5, and (3) Allgood’s file memorandum dated August 11.
In his July 26 letter to Coker, Allgood explained that he met with representatives of Meridian in connection with an unrelated matter and learned that:
Meridian says that it was their company putting up the money for Federal to purchase our CON. According to Meridian, Federal is in very poor financial circumstances.
What about the other two plaintiffs? Have you had any communications with them? I would like to form a joint venture or buy an 85-bed CON from one of the others. Would you make some preliminary contacts with others to see what they might be willing to do?
Allgood’s letter, viewed in a light most favorable to Richmond, does suggest that Allgood considered his agreement with Federal to be terminated, or at least not feasible, since he instructed Coker to look to other certificate applicants for an 85-bed authorization. Nonetheless, when he received a copy of Coker’s August 5 letter to Bivens, he was on notice that the transaction was proceeding. Coker’s letter states: “Please find enclosed a copy of the Richmond Healthcare CON No. 2192. Please copy me with all correspondence and other submittals relating to the consolidation of the CON’s. Please give me a call if you have any questions.” There is little question that Coker, on behalf of Richmond, was continuing to deal with Federal in an effort to consolidate the certificates. At that point the contract’s terminal date had come and gone.
After Allgood received Coker’s August 5 letter he spoke with Coker on August 11, 1986, and dictated a file memorandum disclosing that he knew Federal was treating the contract as still in effect. Allgood, however, remained silent and undertook no effort to correct what he later claimed to be a misapprehension by Federal. Indeed, it appears that Allgood, too, was willing to consider the contract in effect “if the consolidation could be achieved immediately.”
Richmond’s contention that Coker was without authority to extend the July 15 date will not withstand the fact that Richmond had endowed Coker with, at the least, an appearance of authority to act comprehensively on its behalf. Coker was Richmond’s negotiator from the outset of the relationship between Federal and Richmond and Richmond did nothing to overcome the indicia of Coker’s status as Richmond’s agent capable of extending the contract. Be that as it may, however, there is sufficient evidence demonstrating All-good’s ratification of Coker’s actions. All- *761 good was fully aware of Coker’s communications to Bivens reflecting a purpose, in spite of the deadline, to move forward in accomplishing a major aspect of the contract, i.e. the acquisition of a certification consolidated in Federal.
Allgood obviously approved Coker’s determination to send the certificate to Federal on August 5 by telling him on August 11 that he would go through with the consolidation on the condition that it could be “achieved immediately.” There is nothing in the record revealing that this “new” condition was ever related to Federal. Furthermore, Allgood tacitly ratified Coker’s actions by not notifying Bivens or directing Coker to notify Bivens that the contract was no longer alive when Allgood knew that Bivens was proceeding as if the contract had been extended. It was therefore reasonable for Bivens to believe that the contract had been modified by Coker and the deadline abandoned.
Based upon the foregoing analysis of the record, we vacate the final judgment and remand for further proceedings consistent with this opinion.
HERSEY, C.J., concurs.
STONE, J., dissents without opinion.

. This court has on two relatively recent occasions requested this district’s trial courts to in-elude findings of fact and conclusions of law in final judgments rendered in non-jury matters. *760 Banks v. Steinhardt, 427 So.2d 1054, 1057 (FIa.4th DCA 1983); Merrill Lynch Pierce Fenner & Smith v. Melamed, 425 So.2d 127, 129 (Fla.4th DCA 1982), rev. denied, 433 So.2d 519 (Fla. 1983). The court repeats its hope and expectation that in matters tried without a jury the trial courts will attempt to adhere to our requests.