LETTS, Judge,
dissenting.
The appellee, a company in the business of mining and selling uncrushed fill had ten thousand cubic yards thereof available which, by written contract, it sold to appellant, a construction company. Pursuant thereto, the construction company picked up the fill and hauled it to the designated site which the construction company did not own, but on which it planned to develop a townhouse complex. The site had already been demucked by the construction company preparatory to spreading fill there. However, because the local economy had suffered a downturn, it was agreed that the construction company would not have to pay for the fill until it was actually “used,” that is, spread on top of the muck. Some considerable time thereafter, the construction company abandoned the work site without ever spreading the fill stockpiled thereon. Nonetheless, some unknown-party did, at a later date, spread it on the demucked site. The record does not shed any light on why the owner of the de-mucked site is not a party to this law suit. Nor, are we advised as to whose unseen hand it was that generously and gratuitously caused the fill to be “used” or spread. Instead, we are only asked to consider whether the construction company should pay for the fill because it was actually used or whether the fill company should bear the loss because the fill, although used, was not in fact spread by the construction company.
At the outset, it should be noted that some of the foregoing recited facts are in dispute[1] and not all of them are recounted. Suffice it to say, there is competent and substantial evidence in the record to support the decision of the trial judge in this non-jury trial. Marsh v. Marsh, 419 So.2d 629 (Fla.1982). I, therefore, would affirm.
*965 In essence, the construction company argues that it did not purchase the fill at all, but agreed merely to stockpile it at the site, and pay for it only if and when the construction company “used” it, there being no purchase until actual use. The construction company admits that the fill was spread, but argues that since it had nothing to do with, and knew nothing of, the spreading, it did not purchase the fill and cannot be held accountable to pay for same. This argument, predicated on the theory of bailment, was advanced at trial, but rejected by the trial judge who found the contract to be one reflecting a sale. The contract in question is reproduced as follows:
[[Image here]]
*966 I cannot label the trial judge s conclusion an abuse of discretion though I have difficulty with some of his reasoning. To his way of thinking, “use” was the sole issue. In other words, had all ten thousand cubic yards been removed from the site by thieves in the night, the construction company would still be responsible for payment. It is not necessary for me to decide whether such a theft would constitute a “use” which could trigger payment because in the case at bar the “use” contemplated under the contract was inescapably the spreading of the fill on this particular property. Moreover, the site was the construction company’s place of business which it had already demucked in preparation for the spread of the fill. That is exactly what occurred. The construction company would, at a minimum, have had a duty to advise the fill company that it did not plan to use the fill and ask to return it. It could not simply stand by, as it did, and let the fill be employed for the very purpose for which it was intended, yet avoid any responsibility therefore. See Hamilton v. Title Insurance Agency of Tampa, Inc., 338 So.2d 569 (Fla. 2d DCA 1976).
There is a second issue on this appeal. The construction company also argues it was error for the trial judge to refuse to hear evidence that the fill company had illegally mined the very fill under discussion, had in effect stolen it and therefore had no right to recompense. However, no proffer of any such evidence was made at trial. Moreover, on the petition for rehearing, the fill company introduced satisfactory evidence to establish that it had, in fact, paid for the fill which it had mined. Accordingly, I find no reversible error on this point, nor do I find any other reversible error. I would affirm.

. By way of classic example, the appellant argues that the contract was not one of sale, but was merely a stockpiling agreement on which no sale took place before use. That is contrary to the findings of the trier of the fact which come to us clothed with the presumption of correctness.